UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARCIE SALOPEK, Trustee for THE
SALOPEK FAMILY HERITAGE TRUST,

           Plaintiff,

v.                               Case No.: 2:18cv00339/JAP-CG

ZURICH AMERICAN LIFE INSURANCE
COMPANY,

           Defendants.

## PLAINTIFF'S MOTION TO COMPEL ZURICH AMERICA LIFE INSURANCE COMPANY TO PRODUCE AN UNREDACTED COPY OF A MEMORANDUM

Plaintiff, through her attorneys, Randi McGinn and Jamison Shekter of McGinn, Carpenter, Montoya and Love, P.A., and Peter Selvin and Kenneth MacArthur of TroyGould PC, asks the Court for an Order compelling Defendant Zurich America Life Insurance Company ("Zurich") to produce an unredacted copy of a one-page memorandum that, according to Zurich's privilege log, is from a claims handling manual and that concerns misrepresentations in insurance applications.  Zurich redacted all of the substantive content of this memorandum, marked it as confidential pursuant to the protective order in this matter **[Doc. 36]**, and produced it as ZALICO_SAL0002235.

While Zurich's privilege log asserts that the document is protected by the attorney-client privilege, Zurich has failed to provide a sufficient basis for that assertion, and Zurich should therefore be ordered to produce an unredacted copy of the memorandum, or, in the alternative, to provide an unredacted copy of the memorandum to the Court for an *in camera* review and

1

determination as to whether production of the unredacted copy, or any portion thereof, should be ordered by the Court.

## INTRODUCTION

Plaintiff served her first set of demands for documents on Defendant Zurich via email on August 23, 2018.  See Certificate of Service **[Doc. 47]**. Zurich responded on September 28, 20180 **[Doc. 55]**. In its responses, Zurich agreed to produce documents concerning Zurich's policies, practices, guidelines, etc. for handling life insurance claims. **Ex. A**, Relevant Portions of Zurich Resp. to Plaintiff's First Set of Requests for Production of Documents.  Zurich subsequently produced documents (**Ex. B,** Relevant Portions of Zurich's Documents), and provided Plaintiff with a privilege log (**Ex. C**, Relevant Portion of Zurich's Privilege Log).  The Court has entered Orders extending the deadline for Plaintiff to file this Motion to February 21, 2019. **[Docs. 59, 64, 66, 68, 75, 83 & 96]**. The parties met and conferred regarding various issues concerning Zurich's responses, production and privilege log (**Ex. D**, Relevant Meet and Confer Correspondence)**,** and the subject of this motion is the only issue that the parties were not able to resolve informally.

## ARGUMENT

### Background

This lawsuit arises from Zurich's January 13, 017 denial of a claim under a $15,000,000 life insurance policy.  The claim was a "contestable claim," i.e., a claim made within two years of the issuance of the life insurance policy.  See NMSA 1978, Section 59A-20-5.

In denying the claim, Zurich asserted that: (a) the application by Mark Salopek (Plaintiff's husband) contained certain misrepresentations about alcohol and tobacco use; (b) Zurich had obtained information during its claims investigation; and (c) based on the information from the claims investigation, Zurich had determined that the purported misrepresentation were material, and it was therefore rescinding the policy and denying the claim.

Plaintiff's complaint alleges claims for breach of contract, bad faith insurance conduct, violation of the Unfair Insurance Practices Act, Violation of the Unfair Trade Practices Act, and Negligence.

Those claims are based, in part, upon allegations that:

(a) Zurich had an obligation to do a complete investigation to clear up any inconsistencies in the application before accepting money from the insured and promising to protect his family upon his death;

(b) after being given the opportunity for a complete investigation and a signed medical release, an insurance company is not allowed to rescind based on information it could have found through an adequate investigation;

(c) an insurance company which chooses not to conduct an adequate investigation or medical review and testing for an insured that is known to be giving up a vested policy (i.e., Mr. Salopek) based on the new company's promise to provide insurance is not allowed to rescind the policy based on information it could have learned through an adequate investigation;

(d) Zurich willfully, recklessly, and without regard for Plaintiff's rights breached its duty to act in good faith and deal fairly with Plaintiff by, among other things, not conducting a proper, independent investigation before accepting the risk of coverage, but waiting to do such an investigation until after Mr. Salopek's death;

(e) Zurich, on information and belief, has a policy and practice of overly scrutinizing and denying life insurance claims when an insured dies within two years of obtaining coverage; and

(f) Zurich failed to promptly provide Plaintiff a legitimate reason or explanation for the denial.

See, e.g., Complaint ¶¶ 14-16, 19, 31-34, 49, 62-63, 75, 79 & 88; see also _Ellingwood v. N.N. Inv'rs Life Ins. Co._ (1991) 111 N.M. 301, 307-308 (reversing summary judgment in favor of insurer, and stating that "[w]e certainly cannot agree that the only use of medical records should

be for the insurance company, once a claim has been filed, to sift through them for the purpose of claiming the applicant was somehow derelict in his duty to make a full disclosure at the time of his application for insurance. . . .").

In view of Plaintiff's claims about the handling of the life insurance claim, Plaintiff served demands for documents concerning Zurich's policies, practices, guidelines, etc. pertaining to handling life insurance claims, investigating life insurance claims, denying life insurance claims, and rescinding or cancelling life insurance policies.  Zurich's responses to the individual demands varied, but amounted, in short, to agreement to produce the non-privileged responsive documents from the relevant time frame that could be located by a reasonable search.  See Ex. A, Demand Nos. G-L, and Zurich's responses thereto.

Among the documents that Zurich produced were portions of a claims department manual.  The portions of that manual relevant to this motion consist of a portion of the table of contents for that manual (which is not bates-numbered), and one of its sections, a one-page memorandum (Bates-Numbered ZALICO_SAL0002235).  Because Zurich marked those documents as "Confidential," Plaintiff is submitting them in its concurrently filed Motion to Seal Exhibit B, rather than as attachments hereto.

Zurich's privilege log presents the following description of the redacted material in Zurich's Privilege No. 3:

- The "Privilege Date" is June 15, 2016.[1]

- The "Author/From" of the document was Zurich's "Office of the General Counsel* (c/o William Edward Summer)." (The log says that attorneys are marked therein with an asterisk).

- The recipient of the document was Zurich.

---

[1]  During the parties meet-and-confer, Zurich explained that, consistent with the parties document production protocol **[Doc. No. 26-1]**, the date in the log reflects the date the document (i.e., presumably the manual) was last modified, rather than the date on the face of the memorandum.

- The document is protected by the attorney-client privilege.

- **The redacted material is a "[p]ortion** of claim handling manual **reflecting confidential legal advice** regarding the law of Arkansas, Kansas, Missouri, Oklahoma, Rhode Island, Texas, Utah and Wisconsin as to misrepresentations in insurance applications" (emphasis added).

### Legal Standard

As explained by the Court in *Linville v. National Indemnity Company* (D.N.M., Sept. 30, 2014, No. CV 14-0013 JAP/WPL) 2014 WL 12593993, the party withholding purportedly privileged material (i.e., Zurich) has the burden of showing the applicability of the privilege, and must provide the other party (i.e., Plaintiff) with sufficient particulars about the redacted material for the other party to assess the claim of privilege:

> According to Fed. R. Evid. 501, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Under New Mexico law, attorney-client privilege applies to "confidential communication[s] made for the purpose of facilitating or providing professional legal services to that client." NMRA, Rule 11-503 (2013). **The party asserting the privilege bears the burden of showing the privilege's applicability.** *Anaya v. CBS Broad, Inc.*, 251 F.R.D. 645, 650 (D.N.M. 2007) (citing *Pina v. Espinoza*, 29 P.3d 1062, 1069 (N.M. Ct. App. 2001)). In particular, Fed. R. Civ. P. 26(b)(5) requires that **the party claiming the privilege must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim [of privilege]."** As such, " '[t]he bald assertion that production of the requested information would violate a privilege (provided by law) is not enough. The party resisting discovery has the burden to clarify and explain its objections and to provide support therefor.' " *Anaya*, 251 F.R.D

5

at 650 (quoting *United Nuclear Corp. v. Gen. Atomic Co.*, 629 P.2d 231, 293 (N.M. 1980)); *see also In re Foster*, 188 F.3d 1259, 1264 (10th Cir. 1999) (noting that a party opposing production of documents cannot make a blanket claim of privilege).

*Linville v. National Indemnity Company* (D.N.M., Sept. 30, 2014, No. CV 14-0013 JAP/WPL) 2014 WL 12593993, at *2, *on reconsideration* (D.N.M., Dec. 2, 2014, No. CV 14-0013 JAP/WPL) 2014 WL 12616644.

As explained below, Zurich's privilege log is insufficient, and this Court should either order that Zurich produce the document, or, in the alternative, order the Zurich make the document available for an *in camera* examination and determination as whether production should be ordered.

In the event that the Court orders an *in camera* inspection, Plaintiff – not knowing what the redacted material contains – identifies here certain further principles of New Mexico law that may bear on whether the entirety of the redacted material is privileged.

In New Mexico, the attorney-client privilege must be strictly construed, as it is "an exception to the 'established principle that the public has a right to every [party's] evidence.'" *Santa Fe Pac. Gold Corp. v. United Nuclear Corp.*, 2007-NMCA-133, ¶ 13, 143 N.M. 215 (quoting 1 Paul R. Rice, *Attorney-Client Privilege in the United States* § 2:3, at 14 (2d ed. 1999)). New Mexico appellate decisions consistently recognize the limited scope of the attorney-client privilege, noting that it protects only "communications" that are made in confidence between privileged persons for the purpose of facilitating an attorney's rendition of professional legal services to the client. *Id.* ¶ 14. The purpose of the attorney-client privilege is "to encourage clients to make full disclosure to their attorneys." *Anaya v. CBS Broad., Inc.*, 251 F.R.D. 645, 650 (D.N.M. 2007) (quotation marks omitted) (quoting *Fisher v. United States*, 425 U.S. 391 (1976)). In New Mexico, the privilege is defined by the Rules of Evidence and has specific, limited boundaries. *See* Rule 11-503 NMRA.

<u>First</u>, the privilege applies only to **confidential communications**. Rule 11-503(B). A confidential communication is one "made privately and not intended for further disclosure except to other persons in furtherance of the purpose of the communication…." Rule 11-503(A)(4). <u>Second</u>, the privilege applies only to confidential communications that are "made for the purpose of facilitating or providing professional **legal services** to that client." Rule 11-503(B). <u>Third</u>, the privilege applies only to confidential communications between people who have specific relationships to one another (e.g., client and lawyer). Rule 11-503(B). Defendants cannot meet their burden to show the privilege applies to the information Plaintiffs have sought.

Additionally, "the mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege." *Anaya*, 251 F.R.D. at 650 (quoting *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550-1551 (10th Cir. 1995)). "Information is not privileged simply because it comes from an attorney." Anaya, 251 F.R.D. at 650 (quoting *Burton v. R.J. Reynolds Tobacco Co.*, 170 F.R.D. 481, 485 (D. Kan. 1997)). Moreover, "in- house counsel's communications regarding business matters, management decisions, and business advice, which neither solicit or predominantly deliver legal advice, are not privileged." *Anaya*, 251 F.R.D. at 650 (citing 6 James Wm. Moore, *Moore's Federal Practice* § 26.49[4], at 26-182 (3d ed. 1997)).

In summary, if the redacted material constitutes a communication "made for the purpose of facilitating or providing professional **legal services** to that client" may qualify for protection under the attorney-client privilege (Rule 11-503(B)), but if the redacted material merely regards "business matters, management decisions [or] business advice" (e.g., Zurich's procedures for handling contestable claims) then it is not privileged. *See Anaya*, 251 F.R.D. at 650

### This Court Should Order Production of the Memorandum

The description of the memorandum in Zurich's Privilege Log is is insufficient to permit Plaintiff to assess Zurich's claim of privileged as to the redacted material, for four reasons.

First, the memorandum itself is from William Edward Summer, who insofar as Plaintiff is aware is not an attorney and did not work in the Zurich's Office of the General Counsel, but

rather was the Head of Claims for Zurich.  In other words, the memorandum appears to be instructions from Zurich's Head of Claims about handling claims, and not a memorandum from an attorney.

Second, the Privilege Log identifies the recipient of the memorandum as Zurich. In other words, the recipient is also not an attorney or attorneys, but rather would appear to be all of the employees at Zurich tasked with handling life insurance claims.

Third, the assertion in the Privilege Log that the redacted material "reflects" confidential legal advice is next to meaningless, since it seems likely that such a statement could be said as to any portion of Zurich's claims handling manual.  Furthermore, to the extent that the term "reflecting" does have meaning with respect to the redacted material, it seems unlikely to apply to the entirety of the redacted material.

Fourth, in any event, the applicable standard is not whether the redacted material "reflects" legal advice, but rather whether Zurich has provide sufficient detail such that Plaintiff – and the Court – can conclude that the material constituted a "confidential communication[s] made for the purpose of facilitating or providing professional legal services to that client." NMRA, Rule 11-503.  In that regard, it is not evident how material merely "reflecting legal advice" constitutes a communication made for facilitating or providing professional legal services to Zurich, and Zurich has there failed to meet its burden of showing that the material is privileged.

The circumstances here are similar to *Linville*, where Defendant's privilege log described certain documents as "[a]ttorney-client communications between counsel for Defendant and Defendant's employees regarding" a claim.  In opposition to a motion to compel, Defendant elaborated that the documents were one-page confidential emails between in-house counsel and employees providing legal analysis and advice about the pertinent insurance policy.  That explanation was insufficient for the Court, which stated that Defendant's "reasoning for the applicability of the attorney-client privilege does not provide sufficient detail to assess whether the privilege applies," and therefore ordered an *in camera* review. *Linville v. National Indemnity*

*Company* (D.N.M., Sept. 30, 2014, No. CV 14-0013 JAP/WPL) 2014 WL 12593993, at *2–3, *on reconsideration* (D.N.M., Dec. 2, 2014, No. CV 14-0013 JAP/WPL) 2014 WL 12616644.

During the parties' meet-and-confer, Zurich asserted that the redacted material "convey[ed] legal advice from Zurich's Office of Legal Counsel regarding the legal requirements for denying a claim under the laws of several states," and argued that legal advice remains privileged with it is "conveyed by a non-lawyer to other non-lawyers. See Ex D at p. 2.

But that further assertion/argument is just a re-packaging of the insufficient "reflects legal advice" concept stated in Zurich Privilege Log, and it is analogous to the "elaboration" in *Linville* –- i.e., the description of purportedly privileged documents as confidential emails between in-house counsel and employees providing legal analysis and advice about the pertinent insurance policy – that the *Linville* Court found insufficient.

## CONCLUSION

Plaintiff's respectively requests that the Court order that Zurich produce an unredacted copy of the memorandum to Plaintiff, or in the alternative, that the Court order that Zurich provide an unredacted copy of the memorandum to the Court for an *in camera* review as to whether the Court should – in whole or part – order its production.

Respectfully submitted by,



***/s/Randi McGinn***
Randi McGinn
Jamison Shekter
201 Broadway Blvd. SE
Albuquerque, New Mexico 87102
o: (505) 843-6161  f: (505) 242-8227
Randi@McGinnLaw.com
Jamison@mcginnlaw.com

-and-

9

>Peter S. Selvin
>Kenneth J. MacArthur
>Troy Gould, PC
>1801 Century Park East, 16th Floor
>Los Angeles, CA   90067-2367
>Phone:  (310) 553-4441
>Fax:  (310) 201-4746
>pselvin@troygould.com
>kmacarthur@troygould.com
>
>*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2019, I filed the foregoing electronically through the CM/ECF system, which caused all counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

>*/s/Jamison Shekter*
>Jamison Shekter