# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**MARCIE SALOPEK, Trustee for**
**THE SALOPEK FAMILY HERITAGE TRUST**
    Plaintiff,

v.                                                NO. 18-CV-00339 JAP/CG

**ZURICH AMERICAN LIFE INSURANCE**
**COMPANY**,
    Defendant

## MEMORANDUM OPINION AND ORDER

On March 6, 2018, Plaintiff Marcie Salopek, Trustee for Salopek Family Heritage Trust (Plaintiff) filed a Complaint in New Mexico state court against Defendant Zurich American Life Insurance company (Zurich), alleging Breach of Contract, Bad Faith, Unfair Insurance Practices, Unfair Trade Practices, and Negligence. On April 11, 2018, Zurich removed the case to federal court based on diversity of jurisdiction under 28 U.S.C. § 1332.[1] On April 11, 2018, Zurich answered the Complaint.[2]

At a hearing on February 26, 2019, the Court heard argument on two motions filed by Plaintiff. The first motion filed on July 7, 2018, asks the Court to permit the Plaintiff to amend the Complaint to add an additional count of civil conspiracy and to join three additional defendants, Ahmed Hashemian, Capital Aspects, LLC, and Luis Miguel Sisniega.[3] Because

---

[1] *See* NOTICE OF REMOVAL (Doc. 1).
[2] *See* DEFENDANT ZURICH AMERICAN LIFE INSURANCE COMPANY'S ANSWER AND DEFENSES TO PLAINTIFF'S COMPLAINT (Doc. 10).
[3] *See* PLAINTIFF'S MOTION FOR JOINDER AND FOR LEAVE TO FILE AMENDED COMPLAINT TO ADD FACTUAL ALLEGATIONS AGAINST CAPITAL ASPECTS, LLC, A NEW MEXICO COMPANY, AHMAD HASHEMIAN, AND MIGUEL LUIS SISNIEGA (Doc. 38) (First Join and Amend Motion). The title to Plaintiff's First Motion to Join and Amend refers to Mr. Sisniega as Miguel Luis Sisniega, but in the body of the Motion and in the Proposed Amended Complaints, Plaintiff calls him as Luis Miguel Sisniega. The Court has adopted the latter.

1

Plaintiff believes that the joinder of two of the proposed defendants will destroy diversity, Plaintiff also seeks to remand the case to state court. The second motion, filed on September 17, 2018, requests joinder of an another defendant, BGA Insurance.[4]

Zurich responded to both motions,[5] and Plaintiff replied.[6]

After conducting additional discovery, on January 29, 2019, both parties filed supplemental briefing.[7] On February 7, 2019, both parties responded to the supplemental briefing.[8]

At the hearing, attorneys Randi McGinn and Jamison Shekter represented Plaintiff. Attorneys Daniel O'Brien, John Jacobus, and Johanna Dennehy represented Zurich. Gregory Biehler entered a special limited appearance on behalf of Ahmad Hashemian.[9]

After considering the arguments in the Plaintiff's Join and Amend Motions, Zurich's Response, Plaintiff's Reply, the supplemental briefing, as well as the testimony and arguments

---

[4] *See* PLAINTIFF'S SECOND MOTION FOR JOINDER AND FOR LEAVE TO FILE SECOND AMENDED COMPLAINT TO ADD BGA INSURANCE (Doc. 53) (Second Join and Amend Motion). Hereinafter, the Court will refer to the First Join and Amend Motion and the Second Join and Amend Motion as "Join and Amend Motions."
[5] *See* DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR JOINDER AND FOR LEAVE TO FILE AMENDED COMPLAINT TO ADD FACTUAL ALLEGATIONS AGAINST CAPITAL ASPECTS, LLC, AHMAD HASHEMIAN, AND LUIS MIGUEL SISNIEGA (Doc. 41) (Response); and DEFENDANT ZURICH AMERICAN LIFE INSURANCE COMPANY'S OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR JOINDER AND FOR LEAVE TO FILE SECOND AMENDED COMPLAINT TO ADD BGA INSURANCE (Doc. 56) (Second Response)
[6] *See* REPLY *IN SUPPORT OF* PLAINTIFF'S MOTION FOR JOINDER AND FOR LEAVE TO FILE AMENDED COMPLAINT (Doc. 43) (Reply); and PLAINTIFF'S REPLY IN SUPPORT OF HER SECOND MOTION FOR JOINDER AND LEAVE TO FILE SECOND AMENDED COMPLAINT TO ADD BGA INSURANCE [DOC 53] (Doc. 60) (Second Reply).
[7] *See* PLAINTIFF'S SUPPLEMENT IN SUPPORT OF PLAINTIFF'S MOTION FOR JOINDER AND LEAVE TO FILE AMENDED COMPLAINT—ADDITIONAL FACTS FROM AHMAD HASHEMIAN DEPOSITION (Doc. 91) (Pl. Suppl.); and DEFENDANT'S SUPPLEMENTAL MEMORANDUM IN FURTHER RESPONSE TO PLAINTIFF'S MOTION FOR JOINDER AND FOR LEAVE TO FILE AMENDED COMPLAINT (DOC. 38) (Doc. 92) (Def. Suppl.)
[8] *See* PLAINTIFF'S RESPONSE TO ZURICH'S SUPPLEMENTAL MEMORANDUM IN RESPONSE TO PLAINTIFF'S MOTION FOR JOINDER AND LEAVE TO FILE AMENDED COMPLAINT (Doc. 94) (Pl. Suppl. Resp.); DEFENDANT'S REPLY TO PLAINTIFF'S SUPPLEMENTAL MEMORANDUM (DOC. NO. 91) AND IN FURTHER RESPONSE TO PLAINTIFF'S MOTION FOR JOINDER AND FOR LEAVE TO FILE AMENDED COMPLAINT (DOC. NO. 38) (Doc. 95) (Def. Suppl. Resp.).
[9] *See* LIMITED ENTRY OF APPEARANCE ON BEHALF OF WITNESS AHMAD HASHEMIAN (Doc. 100).

presented at the hearing, the Court will deny Plaintiff's Join and Amend Motions.

## II. FACTS & PROCEDURAL HISTORY

**A.     Complaint**

The following facts are alleged in the Complaint:

In southern New Mexico, the Salopek family runs one of the largest pecan farms in the southwest. At some point, Tony Salopek (Tony) put the pecan farm in a trust which provides that only his male descendants could inherit and control the farm. Tony's three sons, who have both sons and daughters, wanted to correct the unfairness to their daughters. To make their children's inheritance more equitable, in 2015, the three sons created the Salopek Family Heritage Trust (SFHT), an entity from which their daughters could inherit in amounts equal to the males' inheritance in the pecan farm. Insurance policies funded SFHT, including a policy acquired by one of Tony's sons, Mark Salopek (Mr. Salopek).

In 2015, the same year the SFHT was created, Mr. Salopek, age 68, had two fully vested life insurance policies with the John Hancock Life Insurance Company in the amount of fifteen million dollars. For some reason not explained in the briefs, Mr. Salopek decided to acquire new life insurance policies. He filled out applications to replace his John Hancock insurance with a new life insurance policy valued in the same amount.

On August 14, 2015, Mr. Salopek applied for life insurance through Minnesota Life. He used insurance agent Ahmed Hashemian (Hashemian). His application included information that his father, Tony, died at 64 of cirrhosis and his mother died at 72 of pancreatic cancer. Mr. Salopek stated that he drank beer daily and, in the past, had used smokeless tobacco.

After conducting a physical examination and an evaluation of Mr. Salopek's medical records, Minnesota Life rejected Mr. Salopek's application on November 3, 2015. Minnesota

Life stated that it would reconsider the application if Mr. Salopek obtained a complete physical with a prostate screening test and a colonoscopy.

The record indicates that another insurance company, Ameritas, also denied Mr. Salopek's application at some time during this period. However, the record does not state when Ameritas denied his application or why.

According to the Complaint, a Medical Information Bureau (MIB) records information provided by life insurance companies about their rejection of applicants and the reasons for the rejection. All life insurance companies may access that MIB information. Minnesota Life recorded its rejection of Mr. Salopek's application in MIB.

The day after the rejection by Minnesota life, Hashemian, through his agent or employee, Luis Miguel Sisniega (Sisniega), filled out an application to Zurich for life insurance. The application disclosed that Mr. Salopek had been rejected for life insurance by Minnesota Life and by Ameritas. The application had some inconsistencies. On one question in the application Mr. Salopek told Zurich that he was a former smoker but still used chewing tobacco occasionally, while in answer to another question he denied use of any tobacco. Zurich did not require Mr. Salopek to undergo a new examination or blood testing but relied on the August 14, 2015 medical examination conducted for Mr. Salopek's application with Minnesota Life.

On December 28, 2015,[10] Zurich issued a life insurance policy on Mr. Salopek's life in the amount of fifteen million dollars to be paid on his death to SFHT. The annual premium for this policy was to be $405,915.04, which Mr. Salopek paid. Subsequently, Mr. Salopek cancelled his policies with John Hancock.

In January 2016, Mr. Salopek had severe stomach pains for which he went to the hospital.

---

[10] The Complaint gives the year as 2016, but, given all other information in the Complaint, this appears to be a typo. See Complaint (Doc. 1-1) at ¶ 49.

On January 15, 2016, he had exploratory surgery, which resulted in a diagnosis of metastatic colon cancer. He died on August 21, 2016.

The family submitted a claim to Zurich on the life insurance policy. Zurich interviewed Mr. Salopek's widow, Marcie Salopek, on December 20, 2016.

On January 13, 2017, Zurich denied the request for payment of the life insurance policy, which was within the two-year incontestability period. In its letter, Zurich identified three inconsistencies in Mr. Salopek's application:

1. An inconsistency between Mr. Salopek's saying that he used chewing tobacco and "dip now and then" and the "No" that was checked on another page denying other tobacco use.
2. Mr. Salopek's claim in his application that he drank one or two beers a day at the time of the application was inconsistent with representations of his previous alcohol use.
3  Mr. Salopek's failure to disclose the removal of a skin cancer in July 2013, which Zurich stated should have been disclosed in response to a question about "Cancer, tumor, polyp or disorder of the skin or breast."

Zurich indicated that points one and two would have made it decline the risk and did not cite the skin cancer as a reason supporting rescission.

**B.     Plaintiff's Motion to Transfer**

On May 9, 2018, after Zurich had removed the case to federal court, Plaintiff filed a motion asking the Court to permit an intra-district transfer of this case.[11] The Motion to Transfer argued that it would be more convenient for all parties if the case were tried in Las Cruces, New Mexico. Zurich opposed the motion, arguing that the trial should remain in Albuquerque, New Mexico.[12] Plaintiff replied.[13] On August 29, 2018, the Court denied without prejudice the Motion

---

[11] *See* PLAINTIFF'S MOTION FOR JUDGE PARKER TO HOLD TRIAL IN LAS CRUCES OR IN THE ALTERNATIVE TO TRANSFER THE CASE TO LAS CRUCES SHOULD TRIAL BECOME NECESSARY (Doc. 23) (Motion to Transfer)
[12] *See* DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGE PARKER TO HOLD TRIAL IN LAS CRUCES OR IN THE ALTERNATIVE, TO TRANSFER THE CASE TO LAS CRUCES SHOULD TRIAL BECOME NECESSARY (Doc. 25).
[13] PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION FOR JUDGE PARKER TO HOLD TRIAL IN LAS

to Transfer.[14]

**C.     Scheduling Order**

On June 11, 2018, Magistrate Judge Garza entered a Scheduling Order setting case deadlines.[15] The Scheduling Order gave Plaintiff until July 12, 2018 to add additional parties or amend the pleadings. Plaintiff's First Join and Amend Motion, filed on July 7, 2018, was within the Scheduling Order's deadline, but Plaintiff's Second Join and Amend Motion filed on September 17, 2018 was not.

**D.     Additional Facts Alleged in the Join and Amend Motions**

The Proposed Second Amended Complaint, which incorporates both Join and Amend Motions, asserts the following additional facts and states that they are based on the discovery Plaintiff obtained after filing the Complaint:

1.     Sisniega's name appears on the final policy documents as the agent who procured the policy for Mr. Salopek. No other agent name appears.

2.     Sisniega was an agent of Zurich based on his contract with Zurich to procure applications. The contract also stipulates that when Sisniega procures policies on behalf of Zurich, he must abide by Zurich's rules.

3.     In 2014, Hashemian and Capital Aspects applied to be Zurich agents, but Zurich turned them down based on compliance issues. Hashemian had at least one regulatory sanction in California and a long history of customer complaints for fraud, misrepresentation, and taking advantage of elderly people by selling them products they do not need.

4.     Capital Aspects has a sub producer agreement with Sisniega signed on September

---

CRUCES OR IN THE ALTERNATIVE, TO TRANSFER THE CASE TO LAS CRUCES SHOULD TRIAL BECOME NECESSARY (Doc. 27).
[14] *See* ORDER (Doc. 50).
[15] *See* SCHEDULING ORDER (Doc. 32).

7, 2009.

5.      Zurich did not inform Mr. Salopek that the type of policy Zurich provided was unsuited to his needs because it was tied to the performance of a mutual fund.

6.      Zurich used a life insurance brokerage company called BGA Insurance as its agents in processing the policy. BGA Insurance gathered information from Hashemian and not from Mr. Salopek. BGA Insurance is licensed in New Mexico, but is a California business, and worked on behalf of Zurich to obtain life insurance policies in New Mexico. The Salopek family did not know about BGA Insurance until it received discovery in this suit.

7.      Zurich and the agents did not do a complete pre-approval underwriting investigation.

8.      Although the agents were informed of Mr. Salopek's cancer diagnosis, they did not inform Mr. Salopek of the pre-death provision of his policy, which would have provided him with two million dollars to help in the last months of his life.

### III. LEGAL STANDARD

Plaintiff brought this case in state court. Subsequently, based on diversity of citizenship,[16] Zurich properly removed this case to federal court under 28 U.S.C. §§ 1441 and 1446. In the Join and Amend Motions, Plaintiff seeks to amend the Complaint by adding an additional count of civil conspiracy.

A party may amend its pleadings once before a responsive pleading is served. Fed. R. Civ. P. 15(1)(A)-(B). After a responsive pleading, under Rule 15(a)(2), a party may amend a pleading only with the opposing party's consent or, if the opposing party does not consent, only with the court's leave. Rule 15(a)(2) further provides that the court should "freely give leave

---

[16] See 28 U.S.C. § 1332 (stating a federal court has subject matter jurisdiction over civil lawsuits when "the matter in controversy exceeds the sum or value of §75,000" and it is between "citizens of different States").

when justice so requires." "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (citing *Castleglen, Inc. v. Resolution Trust Corp.*, 984 F.2d 1571, 1585 (10th Cir. 1993) (further citation omitted)). "[W]here the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." *Frank*, 3 F.3d at 66 (citations omitted).

According to Plaintiff, amendment of this case necessitates joinder of four additional parties: Hashemian, Capital Aspects, Sisniega, and BGA Insurance. In a Proposed Amended Complaint attached as Exhibit A to the Second Join and Amend Motion, Plaintiff asserts against all proposed defendants four of the original counts,[17] plus a civil conspiracy count. Plaintiff admits that these additional parties are not indispensable to this case. Under Fed. R. Civ. P. 20, the Court has discretion to allow joinder of non-indispensable parties.[18] *McPhail v. Deere & Co.*, 529 F.3d at 951-52. Rule 20(a)(1) provides that a plaintiff may join a party as a defendant if "(A) [the plaintiff asserts] any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action."

Plaintiff argues that the joinder of Hashemian and Capital Aspects would destroy diversity, depriving the Court of subject matter jurisdiction. On that basis, Plaintiff asks the

---

[17] Plaintiff asserts Breach of Contract against Zurich only.
[18] In *McPhail v. Deer & Co*, 529 F.3d 947, 951-52 (10th Cir. 2008), the Tenth Circuit seemed to create a standard for reviewing a joinder motion that falls within the parameters of 28 U.S.C. § 1447(e). That standard requires a district court faced with such a motion to first "determine whether a party is indispensable" under Fed. R. Civ. P. 19. *Id.* at 951. New Mexico district courts have found that *McPhail*'s observations were dicta, not a true test. *See, e.g. Hernandez v. Chevron U.S.A., Inc.*, 347 F.Supp.3d 921, 969 (N.M.D.C. 2018). Because all parties agree that joinder here is permissive and that Rule 19 does not apply, the Court will not address that issue.

8

Court to remand the case to state court. Remand to a state court of a previously removed case is guided by 28 U.S.C. § 1447(e) that states: "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action back to State court." Joinder of a non-diverse party mandates remand to a state court. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). However, section 1447 does not give a plaintiff an "absolute right to join such [non-diverse] parties. . .." *McPhail v. Deere & Co*, 529 F.3d 947, 951 (10th Cir. 2008).

## IV. ANALYSIS

### A. Amendment of the Complaint

In the Join and Amend Motions, Plaintiff asserts that Zurich together with the proposed additional parties engaged in civil conspiracy. In New Mexico, "[a] a civil conspiracy must actually involve an independent, unlawful act that causes harm—something that would give rise to a civil action on its own." *Ettenson v. Burke*, 130 N.M. 67, 72 (N.M. App. 2000) (citing *Las Luminarias of the New Mexico Council of the Blind v. Isengard*, 92 N.M. 297, 300 (N.M. App. 1978). Civil conspiracy is "achieving an unlawful purpose or using an unlawful means to achieve a lawful goal." *Id.* To establish civil conspiracy, a plaintiff needs to demonstrate "(1) that a conspiracy between two or more individuals existed; (2) that specific wrongful acts were carried out by the defendants pursuant to the conspiracy; and (3) that the plaintiff was damaged as a result of such acts." *Silva v. Town of Springer*, 121 N.M. 428, 434 (N.M. 1996) (additional citations omitted); *see also Ettenson*, 130 N.M. at 73.

Plaintiff argues that Hashemian, Capital Aspects, Sisniega and BGA Insurance were agents of Zurich who with Zurich conspired to achieve one of the following two goals: (1) the

9

agents wanted to hurry approval of the policy so they could receive significant commissions, and they pushed the policy through a procedure known as churning;[19] and 2) Zurich ignored the red flags raised by the agents' behavior because it wanted to book a high dollar life insurance policy before the end of the year. First Motion to Amend and Join (Doc. 38) at 2, 5.

Plaintiff filed the First Join and Amend Motion before July 12, 2018, the deadline in the Scheduling Order for motions to amend. Plaintiff argues that the Court should permit the amendment because once Plaintiff learned crucial new facts from the initial disclosures, Plaintiff immediately, and within 30 days, filed the motion. Amendment will not prejudice Zurich, Plaintiff states, because the motion was brought early in discovery, before production, interrogatories, or depositions.

In the Second Join and Amend Motion, filed after the Scheduling Order deadline, Plaintiff asks the Court to permit Plaintiff to amend the Complaint a second time to add BGA Insurance. According to Plaintiff, BGA Insurance is an agent of Zurich who worked in concert with Hashemian and Sisniega by gathering relevant application information from Hashemian rather than from Mr. Salopek. Plaintiff asserts she did not learn the relevant facts concerning BGA Insurance's role until after both the initial and supplemental disclosures. Second Join and Amend Motion (Doc. 53) at 4 (stating "Plaintiff did not fully understand BGA Insurance's involvement in this conspiracy" until after the supplemental disclosures.). Because Plaintiff did not receive the supplemental disclosures until twelve days after the Scheduling Order deadline, Plaintiff argues she could not have filed the Second Join and Amend Motion earlier.

The Court finds that Plaintiff offers a plausible excuse for not knowing of BGA

---

[19] Churning is the frequent replacement of investment products to generate commissions for agents at the expense of the account holders. *See Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate 2003*, 715 F.3d 1231 (10th Cir. 2013).

Insurance's involvement in the case until the initial disclosures. Some delay also might have been excusable if Plaintiff did not know of BGA's full involvement until the supplemental disclosures. However, Plaintiff engaged in significant delay. Although Plaintiff received the supplemental disclosures twelve days after the Scheduling Order deadline of July 12, 2018, she did not file the second motion until almost two months later, on September 17, 2018. Notably, Plaintiff does not explain why she never asked the Court to extend the Scheduling Order deadline for motions to amend.

Plaintiff's Second Join and Amend Motion is untimely. Untimeliness alone is enough reason to deny a motion. *See Frank*, 3 F.3d at 1365-66. Because the Second Join and Amend Motion depends on the viability of the First Join and Amend Motion, the Court will turn to that issue. However, in its analysis, the Court will not consider the facts presented in the untimely Second Join and Amend Motion or its attached Second Proposed Amended Complaint.

Zurich argues that the balance of the equities favors denial of the Join and Amend Motions because of Plaintiff's undue delay in amending the Complaint.[20] Zurich bases this argument on its contention that the facts that the First Join and Amend Motion identify as crucial and only discoverable after the initial disclosures, were known or should have been known to the Plaintiff prior to the filing of the Complaint. The Court agrees.

The facts Plaintiff identifies as new and relevant in the First Join and Amend Motion are as follows: Sisniega filled out an application form without consulting with the insured: Sisniega and Hashemian sold the insured a life insurance policy unsuited to Mr. Salopek's needs; Sisniega and Hashemian did not inform Mr. Salopek of the pre-death provisions of the policy; and Zurich

---

[20] Zurich also argues that amendment of the Complaint to include a count of civil conspiracy is futile and/or fraudulent. Because the Court will deny the Join and Amend Motions on other grounds, the Court will not address these arguments.

did not do a complete and thorough pre-approval underwriting investigation.[21] First Join and Amend Motion (Doc. 38) at 2-4. However, the record reveals that knowledge of these facts was not new to Plaintiff.

Much of what the First Join and Amend Motion calls "new facts" revolve around the working relationship of Sisniega and Hashemian. The Complaint acknowledges that relationship when it asserts that Sisniega is "an agent or employee of Hashemian." Similarly, Sisniega's role in completing Mr. Salopek's application is not a new fact. The Complaint documents this when it states that Sisniega completed Mr. Salopek's application by relying on information in Mr. Salopek's application to another company. Complaint (Doc. 1-1) ¶ 40, ¶ 45.[22] The only new information in the Proposed First Amended Complaint about Sisniega's role in preparing the application is that not he, but another employee of Capital Aspects, Michelle Johnson, was the one to fill out the Zurich application. According to the Proposed First Amended Complaint, Sisniega completed the accompanying alcohol and drug questionnaire. See Proposed First Amended Complaint (Doc. 38-1) at ¶¶ 52, 53. This "new" fact offers nothing substantive to the Complaint, but only refines known information. Additionally, because one of the key facts at issue was the misrepresentations in the Zurich application, Sisniega's involvement in preparing that form should have given Plaintiff notice that Sisniega was a possible defendant. *See Frank*, 3 F.3d at 1366 (observing that a motion to amend was untimely in part because plaintiffs knew or should have known before the motion to amend that the party it sought to join was a possible

---

[21] Plaintiff also asserts that Sisniega and Hashemian "[e]ngag[ed] in the proscribed practice of churning." First Join and Amend Motion (Doc 38) at 2. However, this is a legal conclusion based on existing facts and not a fact.
[22] Paragraph 40 states: "The day after his rejection, on November 4, 2015, insurance agent Hashemian, through his agent or employee, Luis Miguel Sisniega, filled out another life insurance application for Zurich Life Insurance company. His answers on this form were virtually identical to the application form he filled out for Minnesota Life Insurance Company." Paragraph 45 states: "Mr. Salopek told Zurich in the life insurance application that he had smoked and quit as a young man, but still "now and then" used chewing tobacco. This answer on page three of the application was inconsistent with a box checked "no" later in the application at 7b by agent Sisniega to a question about use of tobacco other than cigarettes."

defendant).

Other alleged new facts concern the substance of the policy itself. Plaintiff claims that she had no knowledge of either the unsuitability of the policy or the pre-death provisions until almost four months after she filed the Complaint. Plaintiff does not explain why she would not know these specific terms of the life insurance policy. This is puzzling because the Complaint indicates Plaintiff did know some of the policy terms. *See* Complaint ¶ 79a (asserting that Zurich "[m]isrepresent[ed] to Mark Salopek and his beneficiaries pertinent facts or policy provision[s] relating to the life insurance he thought he secured to protect his family[.]"). Plaintiff offers no explanation for not knowing some terms of the policy while knowing others.

Finally, Plaintiff's assertion that Zurich did not do a "complete and thorough pre-approval underwriting investigation" is not a new fact. This allegation appears numerous times in the Complaint. In Count II, Bad Faith Insurance Conduct, Plaintiff charges Zurich with "[n]ot conducting a proper, independent investigation before accepting the risk of coverage, but waiting to do such an investigation until after Mr. Salopek's death." Complaint (Doc. 1-1) at ¶ 75(b). In Count III, Violation of Unfair Insurance Practices Act, Plaintiff states that Zurich "[f]ail[ed] to adopt and implement reasonable standards for the prompt and accurate investigation of an insured's application before accepting the risk of providing life insurance, particularly where it knew he was giving up vested coverage…." *Id.* at ¶ 79(b). And in Count V, Negligence, Plaintiff asserts, "Zurich had a duty to Mr. Salopek and his beneficiary, the Salopek Family Heritage Trust, to conduct a thorough and complete underwriting investigation which addressed any internal inconsistencies in the application…." *Id.* at ¶ 87.

The Court finds that all essential facts that would have supported Plaintiff's claim of civil conspiracy were known to Plaintiff when she filed the Complaint. "[W]here the party seeking

13

amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." *Frank*, 3 F.3d at 1366 (quoting *Las Vegas Ice & Cold Storage co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir. 1993)).

At the hearing, Plaintiff offered an additional possible explanation for Plaintiff's delay. Plaintiff's counsel stated that the long-time association between Plaintiff and Hashemian may have made Plaintiff reluctant to assert a civil conspiracy charge in the Complaint because it would necessitate naming Hashemian in the lawsuit. While the Court understands that Plaintiff may have been disinclined to name a party with whom Plaintiff had an ongoing relationship, that hesitancy does not excuse a four-month delay between the filing of the Complaint and Plaintiff's first attempt to amend the Complaint. Reluctance is not a valid justification for undue delay. *See Las Vegas Ice and Cold Storage Co.*, 3 F.3d at 1365-66 (citing *Wolsey v. Marion Laboratories, Inc.*, 934 F.2d 1452, 1462 (10th Cir. 1991) (undue delay is enough reason to deny leave to amend particularly when the party "offer[s] no adequate explanation for the delay").

**B.   Joinder**

Even if the Join and Amend Motions gave this Court viable reasons for permitting amendment, the Court would deny Plaintiff's Join and Amend Motions because Plaintiff has not shown that joinder of these additional parties is proper. Plaintiff agrees that the parties are not indispensable, and that joinder is permissive. Plaintiff contends, however, that should the Court permit joinder, the Court must remand the case to state court because joinder will destroy diversity. Under § 1447(e), it is the Plaintiff's burden to show that a federal court should exercise its discretion and permit joinder. Federal district courts often evaluate § 1477(e) motions using factors similar to those considered on motions to amend. *See, e.g., Romero v. Harford Cas. Ins.*

*Co.*, 2017 WL 8220447 at *4 (D.N.M. Aug 3, 2017). Plaintiff has not met her burden.

In the First Join and Amend Motion, Plaintiff seeks to join two parties who she contends are domiciled in New Mexico: Hashemian and Capital Aspects, LLC (Capital Aspects). Plaintiff is also domiciled in New Mexico. Because all parties would not then be diverse as required by 28 U.S.C. § 1332, Plaintiff seeks to remand the case to state court under § 1447(e). Zurich agrees that Capital Aspects, a limited liability company, is solely owned by Hashemian and has the same domicile as Hashemian. *See Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1234 (10th Cir. 2015) (a limited liability company has the same domicile as all its members). However, Zurich argues that Hashemian's and Capital Aspect's joinder would not destroy diversity because they are domiciled in California.

"[D]omicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989); *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014) (observing that domicile requires both a residence in a state and intent to remain there indefinitely). When determining domicile for diversity purposes, a court should consider the totality of the circumstances. *Middleton*, 749 F. 3d at 1201-02. Significant factors for a court to weigh when making a determination of domicile include: "the party's current residence; voter registration and voting practices; situs of personal and real property, location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs and other associations; place of employment or business; driver's license and automobile registration; payment of taxes; as well as several other aspects of human life and activity." *See, e.g.,* Charles Alan Wright et al., Federal Practice and Procedure § 36112 at 536-41 (3d ed. 2009); *see also Middleton* 749 F.3d at 1201 (citing Wright and listing these factors). An individual's statement

15

about where he lives is not enough; what he does is equally as important. *See Crowley v. Glaze*, 710 F.2d 676, 678 (10th Cir. 1983); *see also Walden v. Broce Const. Co.,* 357 F.2d 242, 245 (10th Cir. 1966) (observing "[w]hat is in another man's mind must be determined by what he does as well as by what he says.").

Plaintiff argues that the weight of the evidence, and more specifically Hashemian's intent, supports a finding that Hashemian and therefore, Capital Aspects, are domiciled in New Mexico. In opposition, Zurich contends that the record shows that over the years, Hashemian has scaled back his New Mexico ties and has increased his California ones, which indicates a California domicile. Some evidence supports both arguments.

Hashemian has significant ties to New Mexico, including the following: he owns a residence in New Mexico; he has business accounts in New Mexico; he owns commercial properties in New Mexico; he has a primary care doctor in New Mexico; he pays taxes as a New Mexico resident, and on at least one occasion, he has been called to jury duty in New Mexico.

Equally persuasive evidence supports a finding that Hashemian's domicile is in California: Hashemian has a much more expensive residence in California;[23] he has business and personal accounts in California; he owns commercial properties in California; his eye specialist is in California and his eye surgeries have occurred in California; he has a California driver's license; he owns two cars registered in California; and he filed divorce petitions in California state courts, with certifications that he had resided in California for a minimum of six months.

---

[23] Until March 2018, Hashemian resided in New Mexico in an apartment above his leased business space. Pl. Suppl. (Doc 91-1) Ex. Hashemian Deposition, at pp. 33:9-21. Both the apartment and the leased spaced were in a commercial property owned by another limited liability company, Pars LLC. *Id*. at 34:4-9. Hashemian had a ten percent interest in Pars LLC and was the managing partner; the remaining 90 percent interest in Pars was held by Hashemian's children. *Id.* at 34:9-15. In August 2018, Hashemian bought a home in New Mexico worth $440,000. Def. Suppl. (Doc. 92-11) Ex. 11. In contrast, Hashemian's home in California is taxed at $3.5 million but Hashemian estimates its worth at approximately $6 million. *See Id*. (Doc 92-4) at 2 (2018 Tax Bill); (Doc 92-1) at 9, 44:4-8.

While Hashemian's testimony was credible that he intended his domicile to be in New Mexico, the record was replete with evidence that both supported and contradicted his testimony.[24] The Court finds that the evidence does not convincingly establish Hashemian's domicile in either state. The Court's only clear conclusion is that joinder of Hashemian and Capital Aspects will muddy this case and stall its resolution.

IT IS THEREFORE ORDERED THAT:

1) The Court DENIES PLAINTIFF'S MOTION FOR JOINDER AND FOR LEAVE TO FILE AMENDED COMPLAINT TO ADD FACTUAL ALLEGATIONS AGAINST CAPITAL ASPECTS LLC, A NEW MEXICO COMPANY, AHMAD HASHEMIAN, AND MIGUEL LUIS SISNIEGA (Doc. 38); and

2) The Court DENIES PLAINTIFF'S SECOND MOTION FOR JOINDER AND FOR LEAVE TO FILE SECOND AMENDED COMPLAINT TO ADD BGA INSURANCE (Doc. 53).

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[24] For example, it is unclear exactly how Hashemian divides his time between New Mexico and California. In his deposition, Hashemian testified that he spends two to three months of every year in Iran and then alternates the remaining time fifty/fifty between California and New Mexico. *See* Pl. Suppl. (Doc. 91-1) at p. 94:2-6; 103:18-25. In his three divorce petitions, Hashemian signed a certification stating that he had been a resident of California for the six months prior to each petition. Def. Suppl. (Doc. 92-8) Ex 8 at p. 2 (2016 Divorce Petition). If, as Hashemian stated, he spent the six months preceding each divorce petition in California, Hashemian would have spent only 3 months of each of the three petition years in New Mexico, including 2016, the year of significant events. Similar inconsistencies appear throughout the record.