UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARCIE SALOPEK, Trustee for THE
SALOPEK FAMILY HERITAGE TRUST,

    Plaintiff,

v.                                      Case No.: 2-18cv00339/JAP-CG

ZURICH AMERICAN LIFE INSURANCE
COMPANY,

    Defendants.

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL
ZURICH AMERICAN LIFE INSURANCE COMPANY TO PRODUCE
AN UNREDACTED COMPY OF A MEMORANDUM**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ...........................................................................................................1

II. ARGUMENT .................................................................................................................1

    A. Background ........................................................................................................1

    B. Zurich Failed to Provide a Sufficient Privilege Log for the
       Redacted Memorandum .......................................................................................4

       1. Zurich's Insufficient Description of the Redacted Memo ........................4

       2. The Applicable Standards .........................................................................4

       3. Zurich's Description of the Memorandum Fails to Meet Its
          Burden to Sustain Any Privilege................................................................5

       4. Zurich's Arguments to the Contrary Fail ..................................................6

    C. Zurich Has Failed to Establish That the Memorandum is Privileged ..................7

    D. Zurich's Other Arguments Fail ..........................................................................10

       1. Relevance .................................................................................................10

       2. Zurich's Production of Other Documents is Irrelevant............................11

III. CONCLUSION..............................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Anaya v. CBS Broad, Inc.*,
   251 F.R.D. 645 (D.N.M. 2007)....................................................................................5, 9

*In re Intuniv Antitrust Litig.*,
   No. 16-cv-12653-ADB, 2018 WL 6492747 (D. Mass. Dec. 10, 2018)....................................8

*Linville v. National Indemnity Company*
   (D.N.M., Sept. 30, 2014, No. CV 14-0013 JAP/WPL) 2014 WL 12593993 ...................5, 6, 7

*Moffatt v. Wazana Bros. Int'l*,
   No. 14-1881, 2014 WL 5410201 (E.D. Pa. Oct. 24, 2014) ......................................................10

*Navajo Nation v. Urban Outfitters, Inc.*,
   No. 12-cv-0195-BB/LAM, 2016 WL 3475340 (D.N.M. Mar. 25, 2016)..................................9

*Sanchez v. Matta*,
   229 F.R.D. 649 (D.N.M. 2004) (Browning, J.).........................................................................11

*SCO Grp., Inc. v. Int'l Bus. Machs. Corp.*,
   No. 2:03CV0294 DAK, 2006 WL 2938820 (D. Utah Sept. 1, 2006)...................................8, 9

**State Cases**

*Crow v. Capitol Bankers Life Insurance Co.*,
   891 P.2d 1206 (N.M. 1995) ........................................................................................................3

*Ellingwood v. N.N. Inv'rs Life Ins. Co.* (1991)
   111 N.M. 301 ........................................................................................................................2, 3

*Modisette v. Found. Reserve Ins. Co.*,
   427 P.2d 21 (N.M. 1967) ............................................................................................................3

*Norero v. Cincinnati Insurance Co.*,
   No. 13-CV-1114 MCA/SCY, 2015 WL 11089519 (D.N.M. Jan. 6, 2015) ...............................7

**Other Authorities**

Fed. R. Civ. P. Rule 26(b)(1).............................................................................................................1, 4

Fed. R. Civ. P. 26(b)(5)..........................................................................................................................5

Fed. R. Evid. 501 ...................................................................................................................................5

NMRA Rule 11-503............................................................................................................................5, 6

## REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL

Plaintiff hereby files her reply in support of her motion to compel Defendant Zurich America Life Insurance Company ("Zurich") to produce an unredacted copy of a memorandum from Zurich's claims handling manual [Doc. 101]–a one-page memorandum from Zurich's Head of Claims to Zurich's claims handlers concerning misrepresentations in insurance applications.

## I.
## INTRODUCTION

Zurich's privilege log asserts that the attorney-client privilege protects the content of the one-page memorandum from the claims handling manual.

However, Zurich's privilege log did not provide a sufficient basis for that assertion. Zurich's arguments that its log was sufficient fail, as does Zurich's argument that the content is privileged. Zurich should therefore be ordered to produce an unredacted copy of the memorandum.

In the alternative, and in view of Zurich's stated willingness to submit the memorandum to the Court for an *in camera* review, Zurich should be ordered to provide an unredacted copy of the memorandum to the Court for that *in camera* review and determination as to whether production of the unredacted copy, or any portion thereof, should be ordered by the Court.

## II.
## ARGUMENT

**A.  Background**

Under Rule 26(b)(1), the parties' claims and defenses shape the scope of permissible discovery, because that rule permits Plaintiff to obtain discovery of "any nonprivileged matter that is relevant to any party's claim or defense." FRCP 26(b)(1).

We therefore address Zurich's description of "the nature" of this case and the applicable law, but do so only insofar as needed to explain that the parties' claims and defenses make Zurich's underwriting and claims policies and processes relevant and discoverable, except to the extent – if any – that communications pertaining to those policies and practices are privileged.

Plaintiff's claims for breach of contract, bad faith insurance conduct, violation of the Unfair Insurance Practices Act, Violation of the Unfair Trade Practices Act, and Negligence arise from Zurich's denial of a claim under a $15,000,000 life insurance policy.

Plaintiff's complaint alleges, in summary, that Zurich had an obligation to do a complete investigation to clear up any inconsistencies in the application for life insurance for Mr. Salopek, that Zurich did not do so when underwriting the risk, but instead investigated only after Mr. Salopek's death from colon cancer, and then – in bad faith – denied the claim based on information about alcohol and tobacco use that Zurich either already had or could have obtained from an adequate investigation at the time of the application.

Plaintiff's moving papers cited *Ellingwood v. N.N. Inv'rs Life Ins. Co.* (1991) 111 N.M. 301, which rejected the idea that "the only use of medical records should be for the insurance company, once a claim has been filed, to sift through them for the purpose of claiming the applicant was somehow derelict in his duty to make a full disclosure at the time of his application for insurance. . . ." *Ellingwood* 111 N.M. at 307-308.

In *Ellingwood,* the Court – noting that that answers in the subject life insurance application were "internally inconsistent" and that the applicant had authorized the insurer to obtain his medical records – further stated that:

> When an applicant gives sufficient information to alert an insurance company to his particular medical condition or history**, the company is bound to make such further inquiry as is reasonable under the circumstances in order to ascertain the facts surrounding the information given**. . . .
>
> [Where] the insurer has been given sufficient information to alert it to a serious medical condition, and **the insurer has failed to investigate the records of that condition made available by the applicant, we hold the insurer is charged with the information in those records**.

*Ellingwood v. N.N. Investors Life Ins. Co., Inc.* (1991) 111 N.M. 301 (emphasis added).

Zurich's opposition [Doc. 108] ignores this crucial language and instead begins to describe "the nature" of this case with the incomplete assertion that "[i]t is well established, as a

matter of New Mexico law, that an insurance policy is void . . . if the policyholder makes a material misstatement in an application for insurance that induced the insurer to enter into the agreement."

That assertion is incomplete, because it, like the rest of Zurich's opposition, ignores the requirements of *Ellingwood* that an insurer, having sufficient notice, is bound to make further reasonable inquiry, and is charged with the information in the records that it failed to investigate, such that it cannot – as Zurich seeks to do here – sift through those records after a claim for the purpose of belatedly asserting that its insured was derelict in his application.

Moreover, Zurich's assertion is incomplete for the further reason that, as recognized by one of the cases cited by Zurich, an insurer cannot void a policy where there is waiver or estoppel as the result of facts known to the insurer at the time of the application. *Modisette v. Found. Reserve Ins. Co.*, 427 P.2d 21, 25-27 (N.M. 1967) (determining an insurer was not estopped, because there was no evidence in the record in that case to support the trial court's finding that an automobile insurer, at the time of application, had the records of traffic violations upon which it later sought to void the policy).[1]

Zurich's opposition provides a multi-paragraph chronology about the issuance of the policy, Mr. Salopek's death, Zurich's investigation, and Zurich's denial of the claim. Of significance here, that chronology reveals that Zurich's defenses are based in the supposed propriety of its underwriting and claims handling processes. Specifically, Zurich asserts that Zurich: (1) "carefully considered" the application; (2) "was unaware of the true nature of Mr. Salopek's alcohol and tobacco use"; and (3) rescinded the policy, after a "routine investigation," on the basis of supposed "material misrepresentation" regarding alcohol and tobacco use.

---

[1] The other case cited in support of Zurich's assertion about the applicable law, *Crow v. Capitol Bankers Life Insurance Co.*, 891 P.2d 1206, 1212 (N.M. 1995), did not involve or address issues of inquiry notice, waiver, or estoppel.

While those assertions are false, [2] they confirm that Zurich's underwriting and claims handling processes are central to both Plaintiff's claims and Zurich's defenses.

Accordingly, under Rule 26(b)(1), Plaintiff is entitled to discovery of non-privileged matters concerning those processes, including Zurich's claims handling manual and the subject memorandum within it.

**B.** **Zurich Failed to Provide a Sufficient Privilege Log for the Redacted Memorandum**

**1.** **Zurich's Insufficient Description of the Redacted Memo**

Zurich's privilege log described the one-page memorandum as being from "Zurich's Office of the General Counsel* (c/o William Edward Summer)" (the "*" denotes an attorney, according to the log) to "Zurich," and stated that the redacted material was a "[p]ortion of claim handling manual **reflecting confidential legal advice** regarding the law of Arkansas, Kansas, Missouri, Oklahoma, Rhode Island, Texas, Utah and Wisconsin as to misrepresentations in insurance applications" (emphasis added).

Despite the "*" and mention of Zurich's Office of the General Counsel in the privilege log, Zurich's opposition concedes that the memorandum was from its Head of Claims (i.e., Mr. Summer, not an attorney), and that it was directed to Zurich's claims handlers (i.e., other Zurich employees who were also not attorneys).

**2.** **The Applicable Standards**

Plaintiff's moving papers established the following, none of which is disputed by Zurich:

---

[2] As discussed in the briefing on Plaintiff's motion to join additional defendants [see e.g., Doc. No. 43], there is evidence of a conspiracy between Zurich, BGA Insurance, Ahmad Hashemian, Capital Aspects, LLC and Luis Miguel Sisniega, to: (1) sell the financially unsophisticated, 68-year old Mark Salopek a replacement life insurance policy he did not need; (2) rush through the application without following proper underwriting procedures so the agents, brokers, and sales force could get credit for the large premium before the end of the year; and (3) rely upon an unreliable source – Ahmad Hashemian – rather than Mr. Salopek, for underwriting information. *See, e.g.*, an email chain in November 2015 in which Zurich was informed that in response to Zurich's inquiry about Mr. Salopek's tobacco use, Hashemian said that once a year Mr. Salopek smokes a cigar or takes a dip of tobacco "*whichever works out better*" [Doc. 43-2, Bates ZALICO_SAL-0000079].

4
03827-0002 327044.3

- New Mexico state law concerning the attorney-client privilege controls here, because Fed. R. Evid. 501 provides that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."
- Under New Mexico state law, the attorney-client privilege protects "confidential communication[s] made for the purpose of facilitating or providing professional legal services to that client." NMRA, Rule 11-503 (2013).
- The party asserting the privilege (i.e., Zurich) bears the burden of showing the privilege's applicability. *Linville v. National Indemnity Company* (D.N.M., Sept. 30, 2014, No. CV 14-0013 JAP/WPL) 2014 WL 12593993; *Anaya v. CBS Broad, Inc.*, 251 F.R.D. 645, 650 (D.N.M. 2007) (citing *Pina v. Espinoza*, 29 P.3d 1062, 1069 (N.M. Ct. App. 2001)).
- Fed. R. Civ. P. 26(b)(5) requires that **the party claiming the privilege must "describe the nature of the documents**, communications, or tangible things not produced or disclosed—and do so **in a manner that**, without revealing information itself privileged or protected, **will enable other parties to assess the claim [of privilege]."**

3. **Zurich's Description of the Memorandum Fails to Meet Its Burden to Sustain Any Privilege**

The description of the memorandum in Zurich's Privilege Log is insufficient to meet its burden to sustain any privilege.

Zurich's privilege log contains the conclusory assertion that the redacted material "reflect[s]" confidential legal advice, however: (1) as Zurich now acknowledges, the memorandum was not to, or from, an attorney; and (2) the memorandum is contained in Zurich's claims handling manual, and is therefore is presumably about claims handling.

That assertion about "reflecting" legal advice is next to meaningless, especially because such a statement could be said as to any of the portions of Zurich's claims handling manual that were reviewed by Zurich's "in-house counsel prior to its publication to Zurich's claims

5

handlers." Opp. at p. 8. Furthermore, to the extent that the term "reflecting" does have meaning with respect to the redacted material, it seems unlikely to apply to the entirety of the redacted material.

Most importantly, the applicable New Mexico standard is not whether the redacted material "reflects" legal advice, but rather whether Zurich – which has the burden of establishing privilege – has provided sufficient detail such that Plaintiff – and the Court – can conclude that the redacted material constituted a "confidential communication[s] made for the purpose of facilitating or providing professional legal services to that client." NMRA, Rule 11-503.

As the moving papers explained, the circumstances here are similar to *Linville*, where Defendant's privilege log described certain documents as "[a]ttorney-client communications between counsel for Defendant and Defendant's employees regarding" a claim. In opposition to a motion to compel, Defendant elaborated that the documents were one-page confidential emails between in-house counsel and employees providing legal analysis and advice about the pertinent insurance policy. That conclusory explanation was insufficient for the Court, which stated that Defendant's "reasoning for the applicability of the attorney-client privilege does not provide sufficient detail to assess whether the privilege applies," and therefore ordered an *in camera* review. *Linville v. National Indemnity Company* (D.N.M., Sept. 30, 2014, No. CV 14-0013 JAP/WPL) 2014 WL 12593993, at *2–3, *on reconsideration* (D.N.M., Dec. 2, 2014, No. CV 14-0013 JAP/WPL) 2014 WL 12616644. The same rationale applies here.

  **4. Zurich's Arguments to the Contrary Fail**

Zurich makes four arguments in support of its claim that its privilege log provided "more than sufficient information" to assess Zurich's claim of privilege. Those arguments all fail.

First, Zurich asserts that its privilege log includes all the categories of information that the parties agreed upon in their Document Production Protocol. That assertion misses the point. The issue here is not whether the privilege log included the agreed-upon categories of information. Rather, the issue is whether the information provided about this specific redaction is sufficient to sustain Zurich's claim of privilege.

6

Second, Zurich argues that the information in its privilege log is not the kind of "blanket" claim of privilege that courts in this district have found insufficient. For example, in *Norero v. Cincinnati Insurance Co.*, No. 13-CV-1114 MCA/SCY, 2015 WL 11089519 (D.N.M. Jan. 6, 2015) (in which the Court elected to conduct an *in camera* review), the log at issue included only descriptions such as "claims file report, subclaim overview, payments and reserves, [and] match report." *Id.* at *2. But Zurich's argument that it did not make such a "blanket" privilege claim misses the key point. That point is that the description that Zurich did provide – i.e., that the memorandum "reflects" legal advice – is, in the words of *Norero*, "not detailed enough for an outside party to determine whether the asserted privileges are appropriate." *Id.* at *2.

Third, Zurich attempts to distinguish *Linville v. National Indemnity Co.*, Nos. CV 14-0013 and 14-0526 JAP/WPL, 2014 WL 12593993 (D.N.M. Sept. 30, 2014), arguing that it "provided numerous details regarding the nature of <u>the legal advice</u> over which it claims privilege, including the states (*e.g.*, Arkansas) and the topic ('misrepresentations in insurance applications') to which it pertained" (emphasis added). That argument misrepresents the actual description in Zurich's privilege log, which was that the redacted memorandum from its Head of Claims was somehow "reflecting" some indeterminate legal advice. Zurich's log did <u>not</u> assert that the material was itself legal advice, nor did it assert that the material conveyed legal advice.

Lastly, Zurich argues that it "is unclear what additional information Zurich could provide to satisfy Plaintiff without actually disclosing the advice provided." Again, Zurich's log did not assert that the redacted material "provided" legal advice, only that the material was somehow "reflecting legal" advice. In any event, Zurich's description was insufficient, and this argument amounts to an admission that Zurich is unable to provide sufficient information. Accordingly, this Court should order the document produced, or, alternatively, order an *in camera* review.

## C.  **<u>Zurich Has Failed to Establish That the Memorandum is Privileged</u>**

Zurich goes on to claim that the material that it redacted is, "in any event, privileged." All of Zurich's arguments in support of that claim fail.

7

Most of those arguments are premised on the idea that the memorandum (from the Head of Claims, <u>not</u> an attorney) was "legal advice" or that it "conveyed legal advice." However, as discussed above, Zurich's privilege log makes no such claim.

Zurich argues that the legal (as opposed to business) purpose of the advice is clear from the title of the memorandum ("Causal Connection on Contestable Claims") and Zurich's description of its contents. To the contrary, the information disclosed about the memorandum suggests it concerns business matters: the memorandum is from a Zurich businessperson to other Zurich businesspeople; it is contained in Zurich's claims handling manual that was "published" by Zurich to its claims handlers; and it apparently concerns "Causal Connection on Contestable Claims." All of that suggests the memorandum instructs Zurich's claims handlers as to how some claims, including the one at bar, should be handled.

Zurich argues that "documents that advise a company's representatives on [legal] compliance with complex regulatory regimes are shielded from discovery on grounds of privilege." Zurich cites two cases in support, with parentheticals that make clear that the cases concerned legal advice. While neither case applies New Mexico law, both of those cases actually support granting this motion.

In *In re Intuniv Antitrust Litig.*, No. 16-cv-12653-ADB, 2018 WL 6492747, at *4 (D. Mass. Dec. 10, 2018), the Court stated that the "critical inquiry for determining whether the attorney-client privilege applies is whether the communication was made in confidence and primarily or predominantly for the purpose of obtaining or disseminating legal advice." *Id.* at *6. But Zurich has not suggested or argued that the subject memorandum meets that standard. Indeed, and in contrast to Zurich's privilege log, the privilege log at issue in *Intuniv* was significantly detailed to permit that Court to engage in a full and informed discussion of the withheld material, e.g., "five documents were produced with redactions of legal advice that [defendant] determined was provided by [its] attorneys who did not author the documents." *Id.*

In *SCO Grp., Inc. v. Int'l Bus. Machs. Corp.*, No. 2:03CV0294 DAK, 2006 WL 2938820, at *2 (D. Utah Sept. 1, 2006) (finding that the subject documents were protected by the attorney-

client privilege), the Court evaluated the "primary purpose" of the subject documents in light of declarations about the creation and purpose of the documents, and concluded that "the documents['] primary purpose is for legal advice. *Id.* at *3. Here, Zurich has not argued that the memorandum's primary purpose was for legal advice, nor did it submit any declarations about the contents or purpose of the memorandum. Moreover, that Court reached its conclusion only after an *in camera* review of the documents. *Id.*

Zurich argues that the "fact that the advice was provided in a manual containing guidance on a variety of legal and non-legal topics relevant to claims handling does not affect its status as a communication of legal advice." With that assertion Zurich is again trying to re-characterize something that at best was supposedly only "reflecting" legal advice into something that actually was legal advice. Zurich cites *Anaya v. CBS Broadcasting, Inc.*, 251 F.R.D. 645, 652 (D.N.M. 2007), which ruled that the attorney-client privilege applied to most of a section of the 1999 CBS News Standards titled "Legal Issues" that – based on declarations[3] provided to that Court – was drafted by CBS's lawyers "to provide CBS News reporters, producers, editors, and management personnel occupation-relevant legal advice." Here however, Zurich has not claimed that any portion of the memorandum was drafted by Zurich's lawyers, nor has it provided this Court with a declaration about the creation of the memorandum.

Zurich cites *Navajo Nation v. Urban Outfitters, Inc.*, No. 12-cv-0195-BB/LAM, 2016 WL 3475340, at *3 (D.N.M. Mar. 25, 2016) for the proposition that communications that reflect advice given by counsel to a corporation do not lose their privileged status when shared among corporate employees who share responsibility for the subject matter of the communication and "needed to know the legal advice in order to implement it as part of their job duties." That Court found that a sufficient privilege showing had been made, based on a declaration from the

---

[3] We note again that Zurich elected not to submit any declarations in support of its opposition. Therefore, and putting aside Zurich's bare bones assertion of a privilege, there is no evidence before this Court concerning the actual contents or privilege of the memorandum.

9

corporation's Deputy General Counsel about the authors and recipients of the subject emails, and their job responsibilities. Here, and as noted above, Zurich provided no such declaration.

Zurich cites *Moffatt v. Wazana Bros. Int'l*, No. 14-1881, 2014 WL 5410201, at *2 (E.D. Pa. Oct. 24, 2014) (an email from an entity's CFO to its President and CEO disclosing legal advice from counsel was privileged) for the proposition that communications relaying legal advice provided by corporate counsel among non-attorney employees who share responsibility for the pertinent subject matter are privileged. Again, Zurich's privilege log did not claim that the memorandum "conveyed legal advice." Moreover, the Court ruled only after an *in camera* review permitted the Court to conclude that the recipients needed to know the legal advice "to make informed decisions concerning . . . the subject matter of the communication." *Id.* at *3.

In summary, Zurich had the burden of establishing that the memorandum was privileged, and it has failed to meet that burden.

### D. Zurich's Other Arguments Fail

#### 1. Relevance

Zurich argues that the redacted information is not relevant," because it is "unaware of any reason why a claim manual that provides confidential legal advice regarding" the law of other states "would be relevant to any party's claim or defense in this litigation."

That argument fails for at least five reasons.

First, the issue is whether this responsive material is privileged and can therefore properly be withheld from production, not whether it is "relevant" for purposes of trial. As discussed above, Zurich has not established that the redacted material is privileged.

Second, while Zurich's opposition states that Zurich informed the Plaintiff that it would withhold those sections of its claims-handling manual that had no relevance to this case, Zurich's discovery responses expressed its intent to produce the non-privileged responsive documents from the relevant time frame that could be located by a reasonable search. See **Ex. A** to the Motion [Doc. 101-1], Demand Nos. G-L, and Zurich's responses thereto.

Third, nothing in the Rules permits Zurich to limit its production to materials that it unilaterally deems to be relevant for purposes of trial.

Fourth, the memorandum is relevant because this a case about a contestable claim and purported misrepresentations in the Mr. Salopek's insurance application. Importantly, the redacted material – according to Zurich's Privilege Log and meet-and-confer letter – is about contestable claims and misrepresentations in applications.

Fifth, if the redacted material is not privileged, then Plaintiff should be permitted to review it and make her own decisions about its relevance and potential significance for this case, particularly in view of what appears an absence of New Mexico case law dealing with "causal connection" in connection with life insurance claims. *See, e.g.*, *Sanchez v. Matta*, 229 F.R.D. 649, 654 (D.N.M. 2004) (Browning, J.) ("The federal courts have held that the scope of discovery should be broadly and liberally construed to achieve the full disclosure of all potentially relevant information.").

### 2. Zurich's Production of Other Documents is Irrelevant

The redacted memorandum that is the subject of this motion is the only issue that the parties were not able to resolve informally regarding Zurich's discovery responses, production and privilege log. Zurich's opposition repeatedly emphasizes that point as if to suggest that those matters have something to do with the merits of this motion. However, the extent of Zurich's production, and the Parties' successful informal resolution of other issues, have nothing to do with whether Zurich met its burden to sustain its privilege assertion as to the memorandum.

# III.
# CONCLUSION

Plaintiff respectively requests that the Court order Zurich to produce an unredacted copy of the memorandum to Plaintiff.

In the alternative, the Court should order that Zurich provide an unredacted copy of the memorandum to the Court for an *in camera* review in order to permit the Court to make a determination as to whether it should – in whole or part – order its production.

Respectfully submitted by,



***/s/Randi McGinn***
Randi McGinn
Jamison Shekter
201 Broadway Blvd. SE
Albuquerque, New Mexico 87102
o: (505) 843-6161  f: (505) 242-8227
Randi@McGinnLaw.com
Jamison@mcginnlaw.com

-and-

Peter S. Selvin
Kenneth J. MacArthur
Troy Gould, PC
1801 Century Park East, 16th Floor
Los Angeles, CA   90067-2367
Phone:  (310) 553-4441
Fax:  (310) 201-4746
pselvin@troygould.com
kmacarthur@troygould.com

***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

  I hereby certify that on March 28, 2019, I filed the foregoing electronically through the CM/ECF system, which caused all counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

                ***/s/Randi McGinn***
                Randi McGinn

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 28, 2019, I filed the foregoing electronically through the CM/ECF system, which caused all counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

                                                     Jamison Shekter