# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

MARCIE SALOPEK, Trustee for
THE SALOPEK FAMILY HERITAGE TRUST
        Plaintiff,

v.                                     NO. 18-CV-00339 JAP/CG

DEFENDANT AMERICAN LIFE INSURANCE
COMPANY,
        Defendant

## MEMORANDUM OPINION AND ORDER

On June 24, 2019, Defendant Zurich American Life Insurance Company (Defendant) filed a motion seeking judgment on the pleadings as to Counts III, IV, and V[1] of the Complaint filed by Plaintiff Marcie Salopek, Trustee for the Salopek Family Heritage Trust (Plaintiff).[2] On July 29, 2019, Plaintiff responded to Defendant's Motion,[3] and on August 23, 2019, Defendant replied.[4] The Motion is fully briefed. After considering the pleadings and the arguments of counsel, the Court will grant Defendant's Motion.

## I. FACTS & PROCEDURAL HISTORY

The Complaint asserts the following uncontroverted facts:

---

[1] *See* DEFENDANT ZURICH AMERICAN LIFE INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNTS III, IV, AND V OF THE COMPLAINT (Doc. No. 123) (Motion).
[2] *See* COMPLAINT FOR BREACH OF CONTRACT, BAD FAITH, UNFAIR INSURANCE PRACTICES, UNFAIR TRADE PRACTICES AND NEGLIGENCE (Doc. No. 1-1) (Complaint).
[3] *See* PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AS TO COUNTS III, IV, AND VI (Doc. No. 132) (Redacted Response). Plaintiff's first response was redacted. On October 10, 2019, Plaintiff filed under seal an unredacted version of her July 29, 2019 Redacted Response. See CONFIDENTIAL/FILED UNDER SEAL PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AS TO COUNTS III, IV AND V (Doc. No. 158) (Sealed Response).
[4] *See* DEFENDANT ZURICH AMERICAN LIFE INSURANCE COMPANY'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNTS III, IV, AND V OF THE COMPLAINT (DOC. NO. 123) (Doc. No. 141) (Reply).

In southern New Mexico, the Salopek family runs one of the largest pecan farms in the southwest. At some point, the founder of the business, Tony Salopek (Tony), put the pecan farm in a trust which provides that only his male descendants could inherit and control the farm. Complaint (Doc. No. 1-1), ¶ 24. Tony's three sons, who have both sons and daughters, wanted to correct the unfairness to their daughters. *Id.* ¶¶ 25, 26, 27. To make their children's inheritance fairer, in 2015, the three sons created the Salopek Family Heritage Trust (SFHT), an entity from which their daughters could inherit in amounts equal to the males' inheritance in the pecan farm. *Id.* ¶ 28. Insurance policies funded SFHT, including two policies acquired by one of Tony's sons, Mark Salopek (Mr. Salopek). *Id.*

In 2015, Mr. Salopek, age 68, had two fully vested life insurance policies with the John Hancock Life Insurance Company for 15 million dollars. *Id.* ¶ 31. For a reason unexplained in the pleadings, Mr. Salopek decided to get new life insurance policies. He filled out applications with other insurance carriers to replace his two vested policies with a new life insurance policy valued in the same amount. *Id.* In each application, he included the information that any policy issued would replace his vested John Hancock policies. *Id.* ¶ 35.

On August 14, 2015, Mr. Salopek applied to Minnesota Life for life insurance. *Id.* ¶ 36. He used insurance agent Ahmed Hashemian (Hashemian). *Id.* His application included information that his father, Tony Salopek, died at 64 of cirrhosis and his mother died at 72 of pancreatic cancer. *Id.* ¶ 37. Mr. Salopek said he drank beer daily and, in the past, had used smokeless tobacco. *Id.*

After conducting a physical examination and an evaluation of Mr. Salopek's medical records, on November 3, 2015, Minnesota Life rejected Mr. Salopek's application. *Id.* ¶ 38. Minnesota Life said it would reconsider the application if Mr. Salopek obtained a complete

medical examination that included a prostate screening test and a colonoscopy. *Id.*

The record shows that another insurance company, Ameritas, also denied Mr. Salopek's application at some time during this period. However, the record does not say when Ameritas denied Mr. Salopek's application or why. *Id.* ¶ 41.

According to the pleadings, a Medical Information Bureau (MIB) records information provided by life insurance companies about rejections of applications and the reasons for the rejections. All life insurance companies may access that MIB information. Minnesota Life recorded its rejection of Mr. Salopek's application in MIB. *Id.* ¶ 39.

The day after the rejection by Minnesota life, Hashemian, through his agent or employee, Luis Miguel Sisniega (Sisniega), filled out an application to Defendant for life insurance (Application). *Id.* ¶ 40. The Application disclosed that Mr. Salopek had been rejected for life insurance by Minnesota Life and by Ameritas. *Id.* ¶ 41. The Application had some inconsistencies. *Id.* ¶ 45. On one question in the Application, Mr. Salopek told Defendant that he was a former smoker but still used chewing tobacco occasionally, while in an answer to another question, he denied any tobacco use. Both Mr. Salopek and his wife signed the Application. *See* Response (Doc. No. 123-2), Exhibit 2 at 2. Mr. Salopek also signed a release allowing Defendant to obtain all of his insurance and medical information. Complaint (Doc. No. 1-1) ¶ 46. Defendant did not require Mr. Salopek to undergo a new examination or blood testing but relied on the August 14, 2015 medical examination conducted for Mr. Salopek's application with Minnesota Life. *Id.* ¶ 48.

On December 28, 2015,[5] Defendant issued a life insurance policy on Mr. Salopek's life for 15 million dollars payable on his death to SFHT. *Id.* ¶ 49. The annual premium for this policy

---

[5] The Complaint states the year as 2016, but, given all other information in the Complaint, this appears to be a typo. *See* Complaint (Doc. 1-1) at ¶ 49.

was $405,915, which Mr. Salopek paid. *Id.* Subsequently, Mr. Salopek cancelled his policies with John Hancock. *Id.* ¶ 50.

In January 2016, Mr. Salopek had severe stomach pains and went to the hospital. *Id.* ¶ 51. On January 15, 2016, he had exploratory surgery, which resulted in a diagnosis of metastatic colon cancer. *Id.* He died on August 21, 2016. *Id.* ¶ 52.

The family submitted a claim to Defendant on the life insurance policy. *Id.* ¶ 54. Defendant interviewed Mr. Salopek's widow, Marcie Salopek, on December 20, 2016. *Id.* ¶ 55. The Defendant's interviewer read Ms. Salopek some information from Mr. Salopek's files and then asked for more information about Mr. Salopek. *Id.* ¶ 56.

Ms. Salopek said that the medical records were incorrect that Mr. Salopek used snuff; he used chewing tobacco. At times he did not use chewing tobacco at all. *Id.* ¶ 58. Ms. Salopek said that during their marriage, Mr. Salopek drank beer daily. Sometimes he drank 5–6 beers a day, other times he drank 12 or more. *Id.* ¶ 59.

On January 13, 2017, Defendant denied the request for payment of benefits under the life insurance policy, which was within the two-year contestability period. *Id.* ¶¶ 61-62. In its denial letter, Defendant named three inconsistencies in Mr. Salopek's Application:

1.  An inconsistency between Mr. Salopek's saying that he used chewing tobacco and "dip now and then" and the "No" that was checked on another page denying other tobacco use.
2.  Mr. Salopek's claim in his Application that he drank one or two beers a day at the time of the Application was inconsistent with representations of his previous alcohol use.
3.   Mr. Salopek's failure to disclose the removal of a nonrecurrent skin cancer in July 2013, which Defendant stated should have been disclosed in response to a question about "Cancer, tumor, polyp or disorder of the skin or breast."

Complaint (Doc. 1-1) ¶ 62. Defendant indicated that points one and two would have made it decline the risk and did not cite the skin cancer as a reason supporting rescission. *Id.* ¶¶ 63, 64.

On March 6, 2018, Plaintiff filed a Complaint in New Mexico state court against Defendant, alleging the following counts: Count I, Breach of Contract; Count II, Bad Faith Insurance Conduct; Count III, Violation of Unfair Insurance Practices Act; Count IV, Violation of Unfair Trade Practices Act; Count V, Negligence. On April 11, 2018, Defendant removed the case to federal court based on diversity of jurisdiction under 28 U.S.C. § 1332.[6] On April 11, 2018, Defendant answered the Complaint.[7]

On July 7, 2018, Plaintiff filed a motion seeking to amend the Complaint to add an additional count of civil conspiracy and to join three additional Defendants, Ahmed Hashemian, Capital Aspects, LLC, and Luis Miguel Sisniega.[8] A second motion, filed on September 17, 2018, requested joinder of another Defendant, BGA Insurance.[9]

On March 28, 2019, the Court denied both of Plaintiff's motions.[10] The Court concluded that Plaintiff's second motion was untimely. *See* Moo (Doc. No. 109) at 9. With respect to Plaintiff's first motion to amend, the Court held that it was improper because "all essential facts that would have supported Plaintiff's claim of civil conspiracy were known to Plaintiff when she filed the Complaint," and therefore, Plaintiff had not shown the joinder was proper. *Id.* at 13-14.

## II.  LEGAL STANDARD

At any time after the pleadings are closed, but before trial begins, a party may move for judgment on the pleadings under Federal Rule Civil Procedure (Rule) 12(c). A motion for judgment on the pleadings is evaluated under the same standard used in deciding Rule 12(b)(6)

---

[6] *See* NOTICE OF REMOVAL (Doc. No. 1).
[7] *See* DEFENDANT ZURICH AMERICAN LIFE INSURANCE COMPANY'S ANSWER AND DEFENSES TO PLAINTIFF'S COMPLAINT (Doc. No. 10).
[8] *See* PLAINTIFF'S MOTION FOR JOINDER AND FOR LEAVE TO FILE AMENDED COMPLAINT TO ADD FACTUAL ALLEGATIONS AGAINST CAPITAL ASPECTS, LLC, A NEW MEXICO COMPANY, AHMAD HASHEMIAN, AND MIGUEL LUIS SISNIEGA (Doc. No. 38).
[9] *See* PLAINTIFF'S SECOND MOTION FOR JOINDER AND FOR LEAVE TO FILE SECOND AMENDED COMPLAINT TO ADD BGA INSURANCE (Doc. No. 53).
[10] *See* MEMORANDUM OPINION AND ORDER (MOO) (Doc. No. 109).

motions to dismiss. *See Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000).

A Rule 12(b)(6) motion "tests the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick,* 40 F.3d 337, 340 (10th Cir. 1994). When considering a Rule 12(b)(6) motion, the court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. *Smith v. United States,* 561 F.3d 1090, 1098 (10th Cir. 2009). The allegations must "'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ridge at Red Hawk L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (further citation omitted). "The claim is plausible only if it contains sufficient factual allegations to allow the court to reasonably infer liability." *Moya v. Garcia,* 895 F.3d 1229, 1232 (10th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The term "plausible" does not mean "likely to be true." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A mere "formulaic recitation of the elements of a cause of action will not do." *Id.* When analyzing the sufficiency of the allegation under 121(b)(6), a court may consider documents incorporated into the complaint by reference and undisputed at to authenticity. *Smith*, 561 F.3d at 1098.

A federal court exercising diversity jurisdiction applies the substantive law of the forum state. *Boyd Rosene & Assocs., Inc. v. Kansas Mun. Gas Agency*, 123 F.3d 1351, 1352 (10th Cir. 1997). When determining whether dismissal of a cause of action is proper under 12(c) of the

Federal Rules of Procedure, a federal court applies federal law. *See Stickley v. State Farm Mut. Auto Ins. Co.*, 505 F.3d 1070, 1076 (10th Cir. 2007)*; see also Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1099 (10th Cir. 2017) (applying federal standards to motion to dismiss).

### III. ANALYSIS

As a preliminary matter, Plaintiff asks the Court to convert Defendant's motion from a request for judgment on the pleadings to a motion for summary judgment so the Court may consider documents extrinsic to the Complaint. She suggests three bases for doing so. First, according to Plaintiff, discovery has revealed several "new facts" that should be considered in evaluating Defendant's Motion.[11] In opposition, Defendant asserts that Plaintiff's "new facts" are not new to this Court but were facts offered in support of Plaintiff's proposed amended complaints, which the Court denied. While Plaintiff acknowledges that the Court denied her motions to amend her pleadings, she asserts that it is now proper for the Court to use her asserted new facts to fill gaps in her pleadings. She contends that the Court should do so whether the Court considers the Motion on the pleadings or on summary judgment.

Although Plaintiff cloaks her argument as a request for the Court to convert the Motion to one for summary judgment, it is actually an invitation for the Court to reconsider its earlier ruling. The Court denied Plaintiff's motion to amend her Complaint based on its finding that Plaintiff had delayed too long in seeking her amendments. Significantly, the Court held the alleged new facts claimed in Plaintiff's motions to amend were facts either that the Plaintiff

---

[11] Plaintiff argued these allegedly new facts in her Response, and supplied a table using these new facts to substantiate each of her claims only in her Redacted Response. *See* Redacted Response (Doc. No. 132-12, 132-15). In making its ruling, the Court did not consider any facts not pleaded in the Complaint.

should have known or did know prior to the filing of her Complaint.[12] *See* Moo (Doc. No. 109) at 13. As before, none of Plaintiff's alleged new facts in this Motion are new. Consequently, Plaintiff offers no arguments previously unexamined by the Court that would substantiate reconsideration.

Next, Plaintiff cites Rule 56(d) as a basis for converting this Motion to one for summary judgment. Rule 56 delineates the procedures parties must follow when seeking summary judgment. Under Rule 56(d), when a nonmovant cannot adequately respond to a summary judgment motion because material facts are inaccessible, the nonmovant may ask the court to defer its summary judgment ruling. Nowhere in Rule 56 does it say, nor does Plaintiff supply authority for the proposition that subsection (d) applies to a motion for judgment on the pleadings under Rule 12(c). As a summary judgment motion is not before this Court, Rule 56(d) is inapplicable.

Alternatively, Plaintiff suggests that the Court should lower the pleading standard for this case because it was originally brought in state court, which has a lower standard. She supports this argument with the unpublished case *Albuquerque Cab Co. v. Lyft, Inc.*, 2019 U.S. Dist. LEXIS 36800, ¶¶ 22, 23 (D. N. M. Mar. 7, 2019). *Albuquerque Cab* does not support the Plaintiff's argument. In *Albuquerque Cab*, the court did not lower the pleading standard but granted the plaintiff leave to amend a complaint based on the differences between federal and state pleading standards. *Id.* Here, the Court denied Plaintiff's earlier motions to amend. As previously stated, the Court will not now reassess that ruling.

Defendant seeks judgment on the pleadings as to Count III, Violation of Unfair Insurance

---

[12]Citing *Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310, 325 (2d Cir. 2011), Plaintiff argues that new facts can plug the holes in a Complaint and that the Court can consider these new facts without converting the Defendant's Motion to one for summary judgment. The Court declines to do so for the reasons stated.

Practices Act; Count IV, Violation of Unfair Trade Practices Act and Count V, Negligence. All events relevant to this matter occurred in New Mexico, so New Mexico state law applies. Much of Plaintiff's allegations in all three counts rest on a premise that in New Mexico, before issuing Mr. Salopek a policy, Defendant had a legal duty to perform an underwriting investigation that would have exposed any of Mr. Salopek's potential misrepresentations. The substance of a Defendant's duty to a life insurance applicant is an essential element of Plaintiff's Count V Negligence claim. For this reason, the Court will turn first to that question.

## A.    Count V, Negligence

In Count V, Plaintiff alleges negligence. "A negligence claim requires that the plaintiff establish four elements: (1) defendant's duty to the plaintiff, (2) breach of that duty, typically based on a reasonable standard of care, (3) injury to the plaintiff, and (4) breach of duty as cause of the injury." *Zamora v. St. Vincent Hosp.*, 335 P.3d 1243, 1249 (N.M. 2014) (citing *Herrera v. Quality Pontiac*, 73 P.3d 181, 186 (N.M. 2003).

To prove negligence, a plaintiff must first prove as a matter of law, the defendant owed plaintiff a duty. *Calkins v. Cox Estates*, 792 P.2d 36, 38 (N.M. 1990). "A duty is a legal obligation [by a party] to conform a certain standard of conduct to reduce the risk of harm to an individual or class of persons." *Baxter v. Noce*, 752 P.2d 240, 243 (N.M. 1988). In New Mexico, "a duty exists only if 'the obligation of the defendant [is] one to which the law will give recognition and effect.'" *Herrera*, 73 P.3d at 187 (internal alterations in original) (quoting *Ramirez v. Armstrong*, 673 P.2d 822, 825 (N.M. 1983). When considering whether a duty exists, a court should examine legal precedent, statutes, and other principles of law. *Herrera*, 73 P.3d at 186; *see also Calkins*, 792 P.2d at 39 (saying "[t]he existence of a duty is a question of policy to

be determined with reference to legal precedent, statutes, and other principles comprising the law.").

New Mexico recognizes that an insurer owes an insured an implied contractual duty of good faith and fair dealing. *Watson Truck & Supply Co. v. Males*, 801 P.2d 639, 642 (N.M. 1990) (observing "[w]hether express or not, every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement.") (further citation omitted). "This implied covenant is an exception to the general rule that only those obligations contained in the written agreement will be imposed upon the parties." *Ambassador Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 690 P.2d 1022, 1024 (N.M. 1984). But New Mexico law does not recognize an implied negligence standard in insurance contracts. *See id.* (observing that because the implied covenant is an exception to the general rule "[t]o impose a negligence standard on the insurer would violate this general rule and impose a duty that is not expressly provided for in the contract of insurance.").

In her pleadings, Plaintiff does not allege that Defendant's duty toward Plaintiff arose from the insurance contract between them. Rather, Plaintiff asserts that Defendant's duty toward Plaintiff began before the parties' contractual relationship, when Mr. Salopek was an applicant. Plaintiff alleges that Defendant was negligent by doing or not doing the following:

> a. Engaging in underwriting practices that violated its own or industry practices;
> b. Upon information and belief, choosing not to review the MIBs data concerning Mr. Salopek;
> c. Choosing not to have Mr. Salopek undergo an independent medical evaluation and blood testing performed by a [sic] Zurich;
> d. Choosing not to have Mr. Salopek obtain a current medical evaluation from its own primary care provider, including a PSA test and colonoscopy;
> e. Not reviewing all of Mr. Salopek's medical records; and/or
> f. Not conducting a thorough investigation using all resources at its disposal before agreeing to insure Mr. Salopek's life.

Complaint (Doc. No. 1-1) ¶ 86. Each allegation rests on a supposition that before

accepting Plaintiff's Application, Defendant owed Mr. Salopek a duty of care to research and find any events in his current life, health, or background that would make an insurer reject his application.[13] Plaintiff locates this legal duty in the common law, arguing that "New Mexico courts have unambiguously held that insurers have duties of care in the underwriting stage." Redacted Response (Doc. No. 132) at p. 20; Sealed Response (Doc. No. 158) at 20.[14] Based on this premise, Plaintiff concludes that Defendant was negligent in selling Mr. Salopek a policy because, if Defendant had made a thorough investigation of Mr. Salopek's past, Defendant would not have issued the policy. Plaintiff claims three cases support this proposition: *Fed. Deposit Ins. Corp. v. Dee*, 222 F. Supp. 3d 972 (D.N.M. 2016), *Ellingwood v. N.N. Inv'rs Life Ins. Co.,* 805 P.2d 70 (N.M. 1991), and *Bhasker v. Kemper Cas. Ins. Co.*, 361 F. Supp. 3d 1045 (D.N.M. 2019).[15] None of these cases are helpful to Plaintiff's argument.

In *Dee*, the FDIC, who was a receiver for a failed bank, sought to amend pleadings to include claims for negligence, gross negligence, and breach of fiduciary duty in an action against defendant bank officers and directors. As a basis for these claims, the Federal Deposit Insurance Corporation (FDIC) alleged that when underwriting certain business loans, defendants had not used proper credit risk management, and that when these loans were charged off, the FDIC had been harmed. *Dee*, 222 F. Supp. 3d at 1005. The FDIC premised its negligence and gross negligent claims on defendants' alleged "duty to use reasonable care, skill, and diligence in the performance of their duties," which included "'ensuring that any transactions they approved were underwritten in a safe and sound matter.'" *Id.* at 987. Defendants filed a motion to dismiss,

---

[13] Throughout this Opinion, the Court will call the duty as described by Plaintiff an "underwriting duty of care."
[14] The Court cites to the numbers that appear with the timestamp on the filed documents.
[15] Plaintiff also cites opinions from other jurisdictions. However, Plaintiff offers no reason why these cases can or should supplement or displace New Mexico caselaw.

citing as a defense the business judgment rule[16] and arguing that New Mexico law did not recognize causes of action against bank directors or operators for negligence or gross negligence. *Id*. at 989. The FDIC countered that a cause of action for negligence arises from the New Mexico Business Corporations Act, N.M. Stat. § 53-11-35(B) (business governance statute), which sets up a standard of care for corporate directors. The court agreed and held that before approving a business loan, the directors and operators had an underwriting duty under the business governance statute.

Plaintiff argues that *Dee* shows that New Mexico enforces a common law underwriting duty of care. But *Dee* is not on point. Although *Dee* holds that corporate directors and operators have an underwriting duty of care before approving a loan, that duty stems from a New Mexico statute, not from the common law. Moreover, the statutory underwriting duty of care explored in *Dee* is not owed to an applicant but to the business entity the corporate directors and operators represent. Plaintiff cites no statute as a source for a similar duty between an insurance carrier and an applicant.

Plaintiff's second case, *Ellingwood* does address the relationship between a life insurance carrier and an applicant, but not in a manner helpful to Plaintiff. In *Ellingwood*, the applicant filled out an application for life and health insurance with the help of an insurance company agent. *Ellingwood*, 805 P.2d at 71. The applicant had scoliosis that required him to wear a back brace and gave him a noticeably short torso and neck that caused the base of his chin to rest on his chest. The severity of his scoliosis was visually clear. *Id.* at 77. On the application the applicant included his 1980 spinal fusion, supplied his health providers' names, and signed a

---

[16] The business judgment rule is a presumption that when making an informed business decision, directors and officers of corporation do so in good faith with an honest belief that it is in the best interest of the company. *Dee*, 222 F. Supp. 3d at 1016–17.

release for his medical records but did not say that he had severe scoliosis, nor did the

application reference other health problems complicated by the scoliosis. *Id.* The insurance

company issued a provisional policy. When the applicant died and his family made a health and

life insurance claim, the insurance carrier rescinded the policy based on material

misrepresentations. Subsequently, the decedent's family brought the issue to state district court.

The trial court granted the insurance company summary judgment, concluding as a matter of law

that the deceased made material misrepresentations. *Id.* at 71. The New Mexico Supreme Court

reversed. *Id.*

The New Mexico Supreme Court observed that inconsistent information on the

application in addition to the fact that the severity of the applicant's condition was plain to the

insurance agent could support a jury's conclusion that the insurance company had inquiry notice

of the plaintiff's condition. *Id.* at 76. If the jury were to find the insurance company had inquiry

notice, the court said, it would not be unreasonable for the jury to find there had been no actual

misrepresentation and conclude that the insurer could not rescind the contract. *Id.* at 77. As both

questions were fact issues for the jury, the court held that summary judgment was inappropriate

*Id.*

Plaintiff asserts that in so holding, *Ellingwood* supplies a basis for concluding that New

Mexico recognizes an underwriting duty of care. Defendant contends that *Ellingwood* is

distinguishable because its holding does not recognize a common law or statutory underwriting

duty of care but underscores an equitable remedy based on the contract. Defendant is correct.

Under *Ellingwood,* a plaintiff's remedy for a defendant's failure to investigate after

inquiry notice prior to a contractual relationship does not lie in tort. Rather, *Ellingwood* holds

that a defendant may lose its ability to rescind the policy if its failure to investigate is found to be

an implied admission that a misrepresentation is not material. Here, while Plaintiff may have a contractual claim that Mr. Salopek's misrepresentations were not material, *Ellingwood* offers no support for Plaintiff's argument that Defendant owed Mr. Salopek an underwriting duty of care.

*Bhasker* also does not substantiate Plaintiff's argument. Plaintiff phrases the issue in *Bhasker* as a question of whether "negligence in a pre-contract stage could give rise to liability." *See* Redacted Response (Doc. No. 132) at p. 22; Sealed Response (Doc. No. 158) at 22. But this was not the issue in *Bhasker.*

In *Bhasker*, the issue was whether a policy term for non-minimum limits uninsured motorists' coverage had been intentionally or negligently drafted in ambiguous language. The plaintiff alleged that defendant had committed the tort of negligent misrepresentation. The court observed that the policy terms govern the relationship between an insurance carrier and an insured. Generally, a plaintiff's claims based on a breach of contract must stem from the provisions of the contract and a plaintiff cannot have a cause of action based on tort. However, New Mexico recognizes an exception. Every contract carries an implied covenant of good faith and fair dealing. *Bhasker*, 361 F. Supp. 3d at 1132. Tort recovery for breach of that implied covenant is permissible in special relationships only. *Id.* At 1133 (citing *Borgeous v. Horizon Healthcare Corp.*, 872 P.2d 852, 857 (N.M. 1994)).[17] The relationship between an insured and an insurer is a special relationship. *Id.* Because New Mexico recognizes the tort of negligent misrepresentation, an insured could allege negligent misrepresentation by an insurer as a violation of the implied covenant. *See Id.* at 1133. Accordingly, the court concluded that the Plaintiff had properly pleaded that the defendant had "intentionally or negligently drafted

---

[17]  The implied covenant of good faith and fair dealing may not be used "to override express provisions addressed by the terms of an integrated, written contract." *Melnick v. State Farm Mut. Auto Ins. Co.*, 749 P.2d 1105, 1110 (N.M. 1988) (footnote omitted).

ambiguous UIM [uninsured motorist] policy applications" and thereby failed contractually to deliver the promised services. *Id*. At 1150.

Significantly, *Bhasker* is based on an existing common law duty. More important, *Bhasker* locates a plaintiff's action within the actual contractual terms in the policy between the parties. Although the *Bhasker* defendant may have negligently drafted contract terms before the parties entered into the contract, the alleged misrepresentations were present in that contract and did not arise out of a precontractual duty. *Bhasker* does not address or show that New Mexico recognizes any precontractual duties between an insured and an insurer, much less a precontractual common law underwriting duty of care.

In sum, none of Plaintiff's cases support her argument that New Mexico recognizes a legal underwriting duty of care to an applicant. They cannot. The New Mexico Supreme Court has addressed this question and concluded that in New Mexico, no such duty exists.

Although not cited by either party, in *Modisette v. Found. Reserve Ins. Co*, 427 P.2d 21 (N.M. 1967), the New Mexico Supreme Court considered whether an insurance carrier owed an applicant an underwriting duty of care and held the carrier did not. The plaintiff in *Modisett*e obtained a comprehensive automobile policy from defendant, which was canceled. *Id*. at 27. Nine months later, the plaintiff obtained another policy from defendant. The evidence suggested that the applications for both the first and second policy had similar information. *Id.* Twenty-eight days after defendant sold plaintiff the second policy, plaintiff had an automobile collision. *Id*. at 25. Defendant sought to void the policy, arguing that plaintiff had misrepresented facts on his application. Specifically, defendant stated plaintiff had not revealed the following material information: (1) in the 36 months before the defendant sold the plaintiff the automobile policy, two other insurance agencies had either declined or cancelled plaintiff's insurance; (2) during

that same period, plaintiff's driver's license had been put under probation and suspended; and (3) plaintiff had been cited for speeding four times and for reckless driving twice. *Id.* at 24–25. The plaintiff argued that based on the earlier application and the defendant's duty to underwrite the application before granting the policy, the defendant knew or should have known the facts it claimed were misrepresentations. *Id*. at 27. The trial court agreed with plaintiff's argument. But the New Mexico Supreme Court did not.

First, the New Mexico Supreme Court held that an insurance policy is a contract and that it is the contract that creates the relationship between the parties:

> An application for insurance is a mere offer or proposal for a contract of insurance. Before a contract of insurance is effected and any contractual relationship exists between the parties, it is necessary that the application be accepted by the insurer, since insurance companies are not compelled to accept every application presented and may stipulate upon what terms and for what period of time the risk will be accepted.

*Id*. at 25. (citation omitted). In considering an insurer's responsibility before a contractual relationship, the New Mexico Supreme Court held:

> The insurer has the right to set up its own standards, to avail itself of its own experience and the experience of others, to secure information from the applicant, and to rely upon the information furnished as true and to govern its actions accordingly.

*Id.* (citation omitted). Because there was no evidence that the defendant insurance carrier had actual knowledge of the plaintiff's poor driving record or prior insurance applications, the New Mexico Supreme Court held that the trial court had erred when it found that the defendant insurance company either had the information upon which it sought to void the policy or could have obtained it before defendant's accident. *Id.* at 27.

*Modisette* establishes that as a matter of law, New Mexico does not recognize a common law underwriting duty of care. The contract or insurance policy is governed by its terms alone. *See also Safeco Ins. Co. of Am., Inc. v. McKenna*, 565 P.2d 1033, 1037 (N.M. 1962) (observing

"[u]nder New Mexico law the obligation of a liability insurer is contractual and is to be determined by the terms of the policy.") (further citation omitted)). While New Mexico does import an implied covenant of good faith and fair dealing into every insurance contract, that duty attaches to performance of the contract and its provisions, not to underwriting practices prior to its formation. That New Mexico imposes no underwriting duty of care and does not recognize such a duty has further support in the New Mexico insurance code.

The New Mexico insurance code mandates that each insurance policy sold in the state have a two-year contestability period. *See* § 59A-20-5. The statute provides in pertinent part: "There shall be a provision that the policy . . . shall be incontestable, except for nonpayment of premiums, after it has been in force during the lifetime of the insured for a period of two (2) years from its date of issue." *Id.* During this period, an insurer may rescind a life insurance contract for any material misrepresentations made by an insured on an application. The insurer is limited to two years for its investigation. *See Crow v. Capitol Bankers Life Ins. Co.,* 891 P.2d 1206, 1212 (N.M. 1995) (stating "by requiring prompt investigation of statements made in an insurance application, the clause furthers the public policy of denying protection to those who make fraudulent claims."). Two important policies underly the incontestability clause:

> First, it protects the insurance company by giving it an adequate window of time in which to investigate an application for life insurance so as to discover any material misrepresentations on the part of the applicant. Second, it protects the insured from having to defend against a possibly specious challenge long after acquisition of the policy.

*Id.*

Plaintiff's proposition, that an insurer has a duty to discover an applicant's misrepresentations before issuing a policy, would make the incontestability clause superfluous. A guiding legal principle for New Mexico courts is to avoid superfluity by "'determin[ing] and

giv[ing] effect to legislative intent.'" *Fowler v. Vista Care*, 329 P.3d 630, 632 (N.M. 2014)

(quoting *N.M. Indus. Energy Consumers v. N.M. Pub. Regulation Comm'n*, 168 P.3d 105, 112

(N.M. 2007)). New Mexico courts decline "[to] read any provision of the statute in a way that

would render another provision of the statute 'null or superfluous.'" *Fowler*, 329 P.3d at 632

(quoting *State v. Rivera*, 82 P.3d 639 (N.M. 2004)). An underwriting duty of care would obviate

the incontestability clause. There would be no need for a contestability period, because an

insurance carrier would have a duty to discover an applicant's material misrepresentation before

issuing a policy. An insured could counter any attempt by an insurer to rescind a policy before

the conclusion of the the specified two-year period with an argument that the insurer had not

conducted a thorough good faith investigation before a contract existed.

Because as a matter of law Defendant does not owe an applicant an underwriting duty of

care, New Mexico law offers no legal basis for Plaintiff's negligence claim. Plaintiff has not

pleaded a plausible claim under Count V, Negligence.

**B.      Count III: Violation of Unfair Insurance Practices Act**

Count III of the Complaint asserts Defendant violated the New Mexico Trade Practices

and Frauds Act, (TPF) §§ 59A-16-1 through 30. The New Mexico legislature enacted TPF, "to

regulate trade practices in the insurance business and related businesses . . . by defining, or

providing for determination of, practices in this state which constitute unfair methods of

competition or unfair or deceptive acts or practices so defined or determined." § 59A-16-2.

Section 59A-16-20 of the TPF is known as the Unfair Insurance Practices Act (UIPA)[18] and

prohibits "any practice which in this article is defined or prohibited as, or determined to be, an

unfair method of competition, or unfair or deceptive act or practice, or fraudulent." N.M.S.A. §

---

[18] *See, e.g., Hauff v. Petterson,* 755 F. Supp. 2d 1138, 1147–48 (D.N.M. 2010).

59A-16-3. The UIPA delineates 15 specific prohibited practices. In Count III, Plaintiff alleges that Defendant engaged in behavior that violates six of the subsections. The Court will address each in turn.

### 1. Misrepresentation

Subsection (A) of the UIPA prohibits "misrepresenting to insureds pertinent facts or policy provisions relating to coverages at issue." § 59A-16-20(A). Under this statute, insurers have a "duty to disclose material facts reasonably necessary to prevent any statements from being misleading." *Smoot v. Physicians Life Ins. Co.*, 87 P.3d 545, 549 (N.M. Ct. App. 2004) (citation omitted). In language paralleling the statute, Plaintiff alleges that Defendant violated subsection (A) by "[m]isrepresenting to Mark Salopek and his beneficiaries pertinent facts or policy provision relating to the life insurance he thought he had secured to protect his family." Complaint (Doc. No. 1-1) ¶ 79a. Plaintiff does not show any language in the policy that was functionally a misrepresentation to Mr. Salopek but argues that a misrepresentation occurred when Defendant approved Mr. Salopek for coverage. According to Plaintiff, Defendant's act of accepting Mr. Salopek's Application was a promise to unconditionally pay out the policy upon Mr. Salopek's death because Defendant knew approval of the policy would result in Mr. Salopek giving up his vested 15 million-dollar policies.

In opposition, Defendant states there is no basis for this claim because Plaintiff does not name a written or oral promise Defendant made that it would not revoke the policy if there was a material misrepresentation in the Application. Motion (Doc. No. 123) at 15-16; Reply (Doc. No. 141) at 9. Defendant supports this argument with reference to the incontestability clause and asserts that Plaintiff does not allege Mr. Salopek was unaware of the statute or how it operated.

Plaintiff counters with a citation to *Bhasker* as authority for her argument that the

rescission of the policy was a functional misrepresentation. But *Bhasker* is inapposite. As discussed infra, *Bhasker* involves a written policy provision the plaintiffs alleged was substantively a negligent misrepresentation. *Bhasker* brings no authority to Plaintiff's argument that approving a policy creates an inference an insurance carrier will not revoke a policy.

Plaintiff also cites as support the unpublished case *Schwartz v. State Farm Mut. Auto. Ins. Co.*, 2018 U.S. Dist. LEXIS 149153, which, like *Bhasker,* involves a dispute over uninsured motorist coverage. *Schwartz* is an iteration of *Bhasker*, concluding that New Mexico recognizes a negligent misrepresentation claim in some insurance relationships when a carrier does not adequately explain policy coverage provisions to an insured. Like *Bhasker*, *Schwartz* does not discuss or hold that an insurance carrier makes a functional misrepresentation when it rescinds a policy.

Plaintiff has neither asserted nor offered any factual basis for the proposition that Defendant made any kind of misrepresentation to Plaintiff about the policy's terms or Defendant's statutory ability to rescind the policy.

## 2.    Failure to Adopt and Implement Reasonable Standards

An insurer is liable under § 59A-16-20(C) for "failing to adopt and implement reasonable standards for the prompt investigation and processing of insureds' *claims arising under policies.*" (emphasis added). At its core, subsection (C) imposes a duty on insurers to use reasonable standards for the prompt investigation and processing of a *claim*. A claim arises only from an existing contractual relationship created by a policy. Plaintiff alleges that Defendant failed "to adopt and implement reasonable standards for the prompt and accurate investigation of an insured's *application* before accepting the risk of providing life insurance, particularly where it knew he was giving up vested coverage and failing to conduct an adequate investigation after

Mr. Salopek's death." Complaint (Doc. No. 1-1) ¶ 79b (emphasis added). In her Response,

Plaintiff elaborates:

> [Defendant] failed to undertake any of the reasonable standards and practices set
> out in Plaintiff's Complaint at ¶¶ 7 to 19. For example, in paragraph 11, Plaintiff
> alleges that a 'life insurance company's pre-approval investigative tools include . .
> . [a] signed medical authorization . . . [and] [a]ccess to the Medical Information
> Bureau . . . which is designed to provide information on omitted, inconsistent or
> misrepresented information in an application . . ..' Implicit in the very existence
> of this allegation is the contention that [Defendant] failed–intentionally,
> recklessly, or negligently–to adequately utilize these tools in underwriting Mr.
> Salopek's risk.

Redacted Response (Doc. No. 132) at 16; Sealed Response (Doc. No. 158) at 16 (alterations in

original). Yet nothing in the statute suggests that an insurer's duty concerning claims applies to

applications.

Alternatively, Plaintiff says the New Mexico case *G & G Serv., Inc. v. Agora Syndicate,*

*Inc.*, 993 P.2d 751 (N.M. 2000) supplies authority for her argument that Defendant's

investigation of the application was unreasonable under § 59A-16-20(C). Without providing an

explanation for the analogy, Plaintiff argues the New Mexico Court of Appeals found that an

"insurance company failed to adopt reasonable standards for the prompt investigation and

processing of its insured's claims when it denied coverage after having reason to know a loss

occurred while the policy was in force, rather than relying on an incorrect date of loss in a

complaint." Redacted Response (Doc. No. 132) at 17; Sealed Response (Doc. No. 158) at 17.

This case is not relevant.

*G & G Services* concerns an insurer's duty to defend "based on the facts which it knew or

would have known if it had conducted a reasonable investigation at the time the demand for a

defense was made." 993 P.2d at 760. Notably, the *G & G Services* plaintiff's demand was made

under the policy terms of an existing contract. To be sure, the holding in *G & G Services* supplies

guidance that a reasonable investigation will uncover relevant facts material to performance of the insurance policies' contractual provisions, but Plaintiff does not show either facts or policy provisions in the actual contract that demonstrate that Defendant's investigation of the claim was unreasonable. Again, Plaintiff premises this allegation on her assertion that Defendant had an underwriting duty of care as to Mr. Salopek's application. But New Mexico imposes no such duty.

Because Plaintiff has not pleaded that Defendant adopted an unreasonable standard for investigating and processing of Mr. Salopek's claim, she has not set up a factual basis for the allegation under § 59A-16-20(C).

### 3. Failure to Affirm or Deny Coverage of Claims within a Reasonable Time

Under §59A-16-20(D) an insurer must "*affirm or deny* coverage of claims of insureds within a reasonable time after proof of loss requirements under the policy have been completed and submitted by the insured." (emphasis added). In language almost identical to the statute, Plaintiff alleges Defendant violated this provision by "[f]ailing to affirm coverage of the life insurance claim within a reasonable time after proof of loss requirement [sic] were completed and submitted by the insured." Complaint (Doc. No. 1-1) ¶ 79d. But Plaintiff has dropped a crucial word from this statute. Subsection (D) requires the prompt affirmation **or** *denial* of claims within a reasonable time. The statute does not impose an absolute duty to affirm a claim. Like subsection (C), subsection (D) requires the prompt processing of claims. While Plaintiff disputes the ultimate results of Defendant's processing of Mr. Salopek's claim, Plaintiff has not pleaded Defendant did not process the claims promptly.

Plaintiff argues that liability attaches to Defendant under this section because Defendant spent more time investigating Plaintiff's claim than it did in underwriting Mr. Salopek's

application. Plaintiff reasons that a Defendant's good faith responsibility to affirm or deny coverage of claims in a reasonable time means that the Defendant has a corresponding good faith obligation to spend as much time underwriting the application as it does processing the claim. Plaintiff offers no support for this conclusion other than her assertion that Defendant owed Plaintiff an underwriting duty of care. Because Defendant does not owe an applicant an underwriting duty of care, Defendant cannot have a duty to devote as much or more time underwriting a policy as it does in investigating a policy holder's claims.

### 4. Good Faith Settlement

The UPIA prohibits insurers from "not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear." § 59A-16-20(E). The statute sets up the following condition: if liability becomes reasonably clear, the insurer must come to "prompt fair and equitable settlements of an insured's claims." *Id.* Notably, the UPIA does not "require insurers to settle cases they reasonably believe to be without merit or overvalued." *Hovet v. Allstate Ins. Co.*, 89 P.3d 69, 78 (N.M. 2004).

Plaintiff alleges that Defendant did not try "in good faith to effectuate the prompt, fair and equitable settlement of this life insurance claim." Complaint (Doc. No. 1-1) ¶ 79e. Plaintiff's argument rests on a supposition that Defendant has a legal obligation to settle every life insurance claim. However, her argument left out the condition precedent directing that liability be "reasonably clear." Plaintiff has not offered any plausible basis for the conclusion that liability in this case was reasonably clear. The only support Plaintiff offers for this argument is based on the premise that Defendant owed Plaintiff an underwriting duty of care which she imports into the statute through the phrase "good faith." As a matter of law, Defendant owed no such duty; therefore, Plaintiff has not stated a claim under § 59A-16-20(E).

### 5. Compelling Litigation

The UPIA forbids "compelling insureds to institute litigation to recover amounts due under policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds when such insureds have made claims for amounts reasonably similar to amounts ultimately recovered." § 59A-16-20(G). Plaintiff alleges that Defendant violated this provision when it "compel[ed] the Salopek Family Heritage Trust to institute litigation to secure the benefits provided under the life insurance policy." Complaint (Doc. No. 1-1) ¶ 79f. This statute requires Plaintiff to show the following elements: 1) the insured has a reasonable claim under the policy; 2) the insurer denies the insured's reasonable claim; 3) the insured recovers an amount like the insured's initial reasonable claim.

Plaintiff's claim merely restates the law without tying it to specific facts that support her statement that Plaintiff made a reasonable claim under the policy. A claim will survive Rule 12(c) scrutiny only if sets forth more than "conclusory and formulaic recitations." *See Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012). Because making a reasonable claim is an essential element and Plaintiff has not pled any facts that would support her assertion that she made a reasonable claim, the Court concludes that Plaintiff has not stated a claim under this provision.

### 6. Failure to Act Reasonably and Promptly

Subsection (B) of the UPIA requires insurers "to acknowledge and act reasonably promptly upon communications with respect to claims from insureds arising under policies." § 59A-16-20(B). According to Plaintiff, Defendant failed "to acknowledge and act reasonably promptly upon communications with respect to the life insurance claim." Complaint (Doc. No. 1-1) ¶ 79c. To plead an adequate claim under this subsection, Plaintiff must show a communication

between Plaintiff and Defendant and allege that Defendant did not acknowledge or act reasonably upon that communication. Defendant argues that Plaintiff has not stated a claim because her pleading does not identify a communication or give any basis to believe that if there was a communication, Defendant did not answer promptly or reasonably.

In her response, Plaintiff conflates subsections § 59A-16-20(D) (failure to accept or deny coverage) and (E) (compelling litigation) with subsection (B) and argues that when Defendant denied Plaintiff's claim, Defendant did not act reasonably and promptly. Plaintiff does not further explain how the singular act of rescission is a "communication" that violates the statute, nor does she explain how, under the law and the contract terms, rescission was not reasonable or prompt. A bare conclusory allegation cannot support this claim.

The Court concludes that Plaintiff has not pleaded a plausible claim under Count III, Violation of Unfair Insurance Practices Act.

## C.     Count IV, Violation of Unfair Trade Practices Act

In Count IV, Plaintiff alleges that Defendant violated the New Mexico Unfair Practices Act (UPA), NMSA 1978 57-12-1 through 26. The UPA prohibits "[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce." § 57-12-3. To prove a violation of the UPA, Plaintiff must prove four elements:

> First, the complaining party must show that the party charged made an "oral or written statement, visual description or other representation" that was either false or misleading. *Ashlock*, 107 N.M. at 101, 753 P.2d at 347. Second, the false or misleading representation must have been "knowingly made in connection with the sale, lease, rental or loan of goods or services in the extension of credit or . . . collection of debts." *Id.* Third, the conduct complained of must have occurred in the regular course of the representer's trade or commerce. *Id.* Fourth, the representation must have been of the type that "may, tends to or does, deceive or mislead any person."

*Stevenson v. Louis Dreyfus Corp.*, 811 P.2d 1308, 1311 (N.M. 1991) (quoting *Ashlock v. Sunwest Bank of Roswell*, N.A., 753 P.2d 346, 347 (N.M. 1988)). A statement is knowingly

made, "if a party was actually aware that the statement was false or misleading when made, or in the exercise of reasonable diligence should have been aware that the statement was false or misleading." *Stevenson*, 753 P.2d at 1311-12. The UPA separately defines unfair trade practices and unconscionable trade practices.

### 1.    Unfair Trade Practices

The UPA defines an "unfair or deceptive trade practice" as

[A]n act specifically declared unlawful pursuant to the Unfair Practices Act, a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person . . ..

§ 57-12-2(D). Plaintiff alleges that Defendant violated the UPA through unfair trade practices in one or more of the following ways:

a. causing confusion or misunderstanding as to the approval of the life insurance and the circumstances under which it could be rescinded;
b. representing that the life insurance it was promising would be available for the Salopek Family Heritage Trust upon the death of Mark Salopek;
c. representing that its $15,000,000 in life insurance would be available in place of the vested $ 15,000,000 Mr. Salopek gave up to become insured with Zurich;
d. offering this insurance with the intent to challenge payment if Mr. Salopek died within two years of the policy going into effect;
e. failing to pay the death benefit provided for under the policy;
f. using ambiguity or failing to state a material fact about the circumstances under which it would seek to rescind the policy based on the application . . ..

Complaint (Doc. No. 1-1) ¶ 83a-f. Facts included in the Complaint that Plaintiff alleges are relevant to her UPA trade practices claim include the following:

– By underwriting and approving the policy, [Defendant] represented that it conducted underwriting in good faith and would not use unreasonable, willfully blind underwriting to increase the likelihood of successful rescission in the event of Mr. Salopek's untimely death.

– Never communicating with insureds in spite of red flags in the application process.

26

– Promis[ing] to pay trust $15 million on death if insured gave up a vested $15 million dollar policy."

*See* Redacted Response (Doc. No. 132-12) at 1–2.[19] Plaintiff premises the relevance of these asserted facts on her allegation that Defendant owed Plaintiff an underwriting duty of care and that rescission of the policy was a breach of that duty. The Court has concluded that as a matter of law, New Mexico does not recognize an underwriting duty of care. Plaintiff has not alleged any other facts that support a plausible inference of a legally recognizable misrepresentation as an unfair trade practice.

### 2.      Unconscionable Trade Practices

The UPA defines unconscionable trade practices as:

[A]n act or practice in connection with the sale, lease, rental or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services . . . [that] (1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid.

§ 57-12-2(E). Plaintiff alleges that Defendant engage in unconscionable trade practices by "taking advantage of the lack of knowledge and experience of Mr. Salopek in the insurance arena to a grossly unfair degree;" and "by taking action which resulted in a gross disparity between the value received and the price paid." Complaint (Doc. No. 1-1) ¶ 83g-h. Both arguments rely on Plaintiff's premise that Defendant had an underwriting duty of care and that Defendant breached that duty when it rescinded the policy. Because New Mexico law does not recognize an underwriting duty of care, Plaintiff's claim is implausible. Plaintiff supplements her Response, charging that Defendant knew that the "Salopek's were already adequately insured with vested policies." *See* Redacted Response (Doc. No. 132-12) at p. 2. This statement is a bare conclusory

---

[19] Plaintiff includes Exhibit 19 only in the Redacted Response. This exhibit purports to draw a parallel between Counts III, IV, and V and facts alleged in the Complaint and facts extrinsic to the pleadings. The Court did not consider any facts not alleged in the Complaint.

claim without any facts to support it.

None of the facts Plaintiff included in her original Complaint offer any basis for Count IV.

IT IS ORDERED that DEFENDANT ZURICH AMERICAN LIFE INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNTS III, IV, AND V OF THE COMPLAINT (Doc. No. 123) is GRANTED and Counts III, IV, and V are dismissed with prejudice.

_____
SENIOR UNITED STATES DISTRICT JUDGE