**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

MARCIE SALOPEK, Trustee for
THE SALOPEK FAMILY HERITAGE TRUST
          Plaintiff,

v.                                                              NO. 18-CV-00339 JAP/CG

ZURICH AMERICAN LIFE INSURANCE
COMPANY,
          Defendant.

**MEMORANDUM OPINION AND ORDER**

In February 2020, Plaintiff Marcie Salopek, Trustee for The Salopek Family Heritage Trust (Plaintiff) and Defendant Zurich American Life Insurance Company (Defendant) filed two motions in limine[1] seeking to exclude certain evidence at trial.[2] On March 9, 2020, the Court held a pretrial conference[3] and heard arguments on the fully briefed motions.[4] Peter Selvin, Pooja Nair, Jamison Shekter, and Randi McGinn appeared for the Plaintiffs, and John Jacobus, Dan O'Brien,

---

[1] *See* DEFENDANT ZURICH AMERICAN LIFE INSURANCE COMPANY'S OMNIBUS MOTION IN LIMINE (MOTIONS IN LIMINE #1-#3) (Doc. 207) (Omnibus Motion); and PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE AUDIO RECORDING OF MARK SALOPEK (Doc. 208) (Mot. To Exclude Audio Recording).
[2] Both parties also filed motions seeking to exclude or limit expert testimony, *see* Docs. 216, 218, 219, which the Court will rule on separately.
[3] Trial had been set for March 30, 2020, but that trial was continued as were all jury trials scheduled to commence before April 10, 2020 pending further order of the Court. *See* Order (Doc. 278).
[4] *See* PLAINTIFF'S RESPONSE TO DEFENDANT ZURICH AMERICAN LIFE INSURANCE COMPANY'S OMNIBUS MOTION IN LIMINE (MOTIONS IN LIMINE #1-#3) (Doc. 238); DEFENDANT ZURICH AMERICAN LIFE INSURANCE COMPANY'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S OMNIBUS MOTION IN LIMINE (MOTIONS IN LIMINE #1-#3) (Doc. No. 207)) (Doc. 260); DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE AUDIO RECORDING OF MARK SALOPEK (Doc. 239); PLAINTIFF'S REPLY IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE AUDIO RECORDING OF MARK SALOPEK (Doc. 264).

1

and John Kavanaugh appeared for Defendants. At that time, the Court orally granted Defendant's Omnibus Motion and took the Mot. To Exclude Audio Recording under advisement.[5]

On July 23, 2020, Plaintiff filed a motion asking the Court to reconsider its ruling on Defendant's Omnibus Motion.[6] The Motion is fully briefed.[7] After reviewing all briefings and considering the arguments of counsel, the Court will deny Plaintiff's Motion for Reconsideration of Defendant's Omnibus Motion.[8]

## BACKGROUND[9]

In 2015, Mr. Mark Salopek decided to acquire a new life insurance policy in the amount of $15,000,000. On August 14, 2015, Mr. Salopek applied to Minnesota Life. On November 3, 2015, after conducting a physical examination and an evaluation of Mr. Salopek's medical records, Minnesota Life rejected Mr. Salopek's application. The record indicates that another insurance company, Ameritas, also denied Mr. Salopek's application at some point during this period.

The day after Minnesota Life rejected Mr. Salopek's application, someone[10] completed a life insurance application for submission to Defendant (Application). The Application has three parts: Part I, Part II, and an Alcohol and Drug Questionnaire. All three parts were signed by Mr. Salopek and dated November 4, 2015. Marcie Salopek also signed Part I.

---

[5] At that hearing, the Court also announced its ruling denying PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE PRINCIPAL-AGENT RELATIONSHIP BETWEEN DEFENDANT ZURICH AMERICAN LIFE INSURANCE COMPANY, BGA INSURANCE, AND LUIS MIGUEL SISNIEGA (Doc. 191) and granting in part and denying in part DEFENDANT ZURICH AMERICAN LIFE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT (Doc. 193). The oral ruling was memorialized in a written MEMORANDUM OPINION AND ORDER (Doc. 275) (SJ MOO) entered on March 18, 2020.
[6] *See* PLAINTIFF'S RENEWED OPPOSITION TO ZURICH'S MOTION IN LIMINE #1, TO EXCLUDE EVIDENCE OF REPLACEMENT INSURANCE POLICY (Doc. 292) (Reconsideration Motion).
[7] *See* DEFENDANT ZURICH AMERICAN LIFE INSURANCE COMPANY'S RESPONSE IN OPPOSITION TO "PLAINTIFF'S RENEWED OPPOSITION TO ZURICH'S MOTION IN LIMINE #1, TO EXCLUDE EVIDENCE OF REPLACEMENT POLICY" (Doc. 298) (Response); REPLY IN SUPPORT OF PLAINTIFF'S RENEWED OPPOSITION TO ZURICH'S MOTION IN LIMINE #1 (Doc. 299) (Reply).
[8] The Court will also memorialize in writing its oral decision to take the Mot. to Exclude Audio under advisement.
[9] The Court found these facts in its previous ruling on the parties' Motions for Summary Judgment. *See* SJ MOO (Doc. 275).
[10] The parties dispute who actually completed the Application.

On the Application, Mr. Salopek stated that he used chewing tobacco "now and then and mostly on hunting trips" and that the date he had last chewed tobacco was in 2009. He denied smoking or using tobacco in the last five years. Mr. Salopek further stated that he had never been treated for alcohol abuse. On the Alcohol and Drug Questionnaire, Mr. Salopek indicated that he usually drank 1-2 beers daily and that the date of his last drink was November 2, 2015. He also checked "no" to the question asking whether he had "ever consulted a doctor or received treatment because of your alcohol use." Above Mr. Salopek's signature, is this statement: "I represent that the answers to the questions above are to the best of my knowledge, true and complete. I agree that they will form a part of my application and the policy, if issued." The signature is dated November 4, 2015.

Mr. Salopek signed a release permitting Defendant to obtain all his insurance and medical information. Defendant did not require Mr. Salopek to undergo a new examination or blood testing but relied on the August 14, 2015 examination conducted for Mr. Salopek's application to Minnesota Life.

On December 15, 2015, Defendant issued a life insurance policy (Policy) numbered 200436 on Mr. Salopek's life in the amount of $15,000,000 to be paid on his death to the Salopek Family Heritage Trust (SFHT).

The Policy contained an Incontestability Provision.[11] The Incontestability Provision stated that the Policy would not be contested "after it has been in force during the life of the Insured for two years from the Issue Date, except for fraud (when permitted by the law of the state where the

---

[11]By statute, New Mexico requires life insurance policies to contain notice of the contestability of the policy:
> There shall be a provision that the policy (exclusive of provisions relating to disability benefits or to additional benefits in the event of death by accident or accidental means) shall be incontestable, except for nonpayment of premiums, after it has been in force during the lifetime of the insured for a period of two (2) years from its date of issue.

NMSA 1978, § 59A-20-5. The Court refers to the notice required by this statute as the "Incontestability Provision."

3

policy is delivered) and the non-payment of premium." Also included in the policy was a statement explaining when and how the Defendant would exercise the Incontestability Provision:

> We have relied upon the application(s) in issuing this policy. All statements made in the application for issuance or reinstatement, in the absence of fraud, are representations and not warranties. No statement will cause this policy to be rescinded or be used in defense of a claim unless it is contained in the written application and such statement is attached to this policy. We have assumed all statements to be true and complete. If any are not, We may, subject to the Incontestability provision, have the right to void this policy and send back all premiums paid, minus Policy Debt and any partial withdrawals.

*See* Unredacted Summary Judgment Motion Ex. 37 (Doc. 235-29) at 32-33.[12]

The Policy went into effect on December 15, 2015. On behalf of the SFHT, Marcie Salopek signed a delivery receipt dated December 14, 2015, indicating that she had received the Policy numbered 200436.

After receiving Defendant's Policy, Mr. Salopek renounced two existing life insurance policies: one in the amount of $5,000,000.00 and the other in the amount of $10,000,000.00. Both policies had fully vested, meaning that the insurer had not rescinded the policies within the two-year contestability period and therefore, could no longer do so.

On January 15, 2016, Mr. Salopek was diagnosed with metastatic colon cancer. Mr. Salopek died on August 21, 2016. The family submitted a claim on the Policy. Defendant conducted a Policy claims review. During the review, when questioned about Mr. Salopek's tobacco use, Marcie Salopek stated that Mr. Salopek had chewed tobacco on and off but that he had not been using chewing tobacco for an undefined period prior to his cancer diagnosis. As to Mr. Salopek's alcohol use, Marcie Salopek stated "sometimes Mark would drink four or five beers, and sometimes he'd drink, you know, 12, 16 beers." She confirmed that over the years he

---

[12] The Court did not find this fact in the SJ MOO, but the parties have not disputed these Policy provisions.

habitually drank that way. Finally, Marcie Salopek stated that in 2013, Mr. Salopek had skin cancer, surgery, and treatment.

On January 13, 2017, within the two-year contestability period, Defendant denied the claim on the Policy. In its letter, Defendant identified three inconsistencies in Mr. Salopek's Application: (1) An inconsistency between Mr. Salopek's saying that he used chewing tobacco and "dip now and then" and the "No" that was checked on another page denying other tobacco use; (2) Mr. Salopek's claim in his application that he drank one or two beers a day at the time of the application was inconsistent with representations of his previous alcohol use; (3) Mr. Salopek's failure to disclose the removal of a skin cancer in July 2013, which Defendant stated should have been disclosed in response to a question about "Cancer, tumor, polyp or disorder of the skin or breast." Defendant indicated that complete and correct responses to Point 1 and Point 2 would have made it decline the risk, but Defendant did not cite the skin cancer as a reason supporting denial. Defendant issued a refund check to Plaintiff for the sole premium payment on the Policy. Plaintiff did not cash the check.

## PROCEDURAL HISTORY

On March 6, 2018, Plaintiff filed a five-count Complaint in New Mexico state court against Defendant, alleging the following claims: Count I, Breach of Contract; Count II, Bad Faith Insurance Conduct; Count III, Violation of Unfair Insurance Practices Act; Count IV, Violation of Unfair Trade Practices Act; and Count V, Negligence. On April 11, 2018, Defendant answered the Complaint and removed the case to federal court based on diversity under 28 U.S.C. § 1332.[13]

On December 11, 2019, the Court dismissed three of Plaintiff's claims: Count III, Violation of Unfair Insurance Practices Act; Count IV, Violation of Unfair Trade Practices Act; and Count

---

[13] *See* DEFENDANT ZURICH AMERICAN LIFE INSURANCE COMPANY'S ANSWER AND DEFENSES TO PLAINTIFF'S COMPLAINT (Doc. 10) and NOTICE OF REMOVAL (Doc. 1).

V, Negligence.[14] In January 2020, the parties filed competing motions for summary judgment.[15] Defendant asked the Court for summary judgment on the two remaining counts: Count I, Breach of Contract and Count II, Bad Faith Insurance Conduct, while Plaintiff asked the Court to determine the principal-agent relationship between Defendant and two non-parties. The Court partially granted Defendant's summary judgment motion and dismissed Count II. The Court denied Plaintiff's partial summary judgment motion, finding that whether nonparties had functioned as brokers or agents was a disputed issue of material fact.

## STANDARDS

"[I]n a federal diversity action, the district court applies state substantive law—those rights and remedies that bear upon the outcome of the suit—and federal procedural law—the processes or modes for enforcing those substantive rights and remedies." *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 668 (10th Cir. 2018). The sole remaining count in these proceedings is a breach of contract claim. An insurance policy is a contract. *See Modisette v. Found. Reserve Ins. Co.*, 427 P.2d 21, 25 (N.M. 1967). The contract was written, and the parties entered into it in New Mexico, so New Mexico state law applies. Under New Mexico law, "[t]he elements of a breach-of-contract action are the existence of a contract, breach of the contract, causation, and damages." *Abreu v. New Mexico Children, Youth & Families Dep't*, 797 F.Supp.2d 1199, 1247 (D.N.M. 2011) (further citation omitted).

Plaintiff's Motion asks the Court to reconsider its ruling on Defendant's motion in limine. Functionally, a motion in limine is a "'request for guidance by the court regarding an evidentiary

---

[14] *See* MEMORANDUM OPINION AND ORDER (Doc. 181).
[15] *See* PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE PRINCIPAL-AGENT RELATIONSHIP BETWEEN DEFENDANT ZURICH AMERICAN LIFE INSURANCE COMPANY, BGA INSURANCE AND LUIS MIGUEL SISNIEGA (Doc. 191); DEFENDANT ZURICH AMERICAN LIFE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT (Doc. 193).

question.'" *Jones v. Stotts*, 59 F.3d 143, 146 (10th Cir. 1995) (quoting *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983)). In limine motions may be "made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 (1984).

To be admissible at trial, evidence must be relevant. Generally, "evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *United States v. Ibarra-Diaz*, 805 F.3d 908, 928-29 (10th Cir. 2015) (quoting *United States v. Bowling*, 619 F.3d 1175, 1182 (10th Cir. 2010) (further citation omitted)). But relevant evidence is not always admissible. "'Rule 403, however, permits a court to 'exclude relevant evidence if its probative value is substantially outweighed by danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" *Ibarra-Diaz*, 805 F.3d at 929 (quoting *United States v. Archuleta*, 737 F.3d 1287, 1292 (10th Cir. 2013) (further citations omitted)).

## ANALYSIS

Plaintiff alleges that Defendant breached its contractual duty to disburse $15,000,000 under the Policy after Mr. Salopek's death. To support her argument, Plaintiff seeks to introduce evidence that Mr. Salopek purchased Defendant's Policy to replace two fully vested policies with total death benefits of $15,000,000. In New Mexico, a policy holder becomes fully vested in a life insurance policy after the expiration of a two-year contestability period. *See* NMSA 1978, § 59A-20-5. But during the initial two-year period, an insurer may rescind a policy based on any material misrepresentations in the insured's application. *See Crow v. Capitol Bankers Life Ins. Co.*, 891 P.2d 1206, 1212 (N.M. 1995). According to Plaintiff, however, when a life insurance applicant

7

has a vested policy interest in other policies, an insurer has a heightened underwriting duty before issuing a replacement policy. Because Defendant replaced Plaintiff's two vested policies with its own unvested Policy, Plaintiff argues that Defendant's failure to discover any misrepresentations in the Application before issuing the Policy bars rescission.

Defendant asserts that it rightfully rescinded Mr. Salopek's Policy because he misrepresented his true alcohol and tobacco use. In the Omnibus Motion, Defendant moved the Court to exclude: 1) evidence concerning the extent that death benefits would have been payable under two fully vested policies that were replaced by Defendant's policies; 2) evidence and argument regarding the merits of requiring Mr. Salopek to obtain a colonoscopy as a condition of insurability; and 3) evidence regarding Defendant's parent company. *After concluding as a matter of law, that in New Mexico, Defendant did not have an underwriting duty*,[16] the Court orally granted Defendant's Omnibus Motion, finding that Plaintiff's evidence was irrelevant under Federal Rule of Evidence (Rule) 401 and its probative value was substantially outweighed by a danger of unfair prejudice under Rule 403.

Now Plaintiff asks the Court to reconsider only its ruling excluding evidence that Defendant had two vested policies. According to Plaintiff, Mr. Salopek's detrimental reliance on the issuance of Defendant's Policy is core to Plaintiff's new theory of estoppel, and the reasonableness of Defendant's alleged reliance on the statements in Mr. Salopek's application is central to Zurich's affirmative defense of rescission. Defendant opposes Plaintiff's Reconsideration Motion on two bases.

Defendant first argues that the Court should deny the Reconsideration Motion as untimely and/or because it raises no new issues that have not already been considered. Plaintiff counters that

---

[16] Plaintiff continues to ignores the Court's ruling. To be clear, the Court emphasizes it here.

her motion is timely as motions in limine may be reconsidered at the court's discretion. Plaintiff's argument has legal support. "[I]n limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 758, 755 (2000); *see also Jones*, 59 F.3d at 146 (observing "the district court may change its ruling at any time for whatever reason it deems appropriate."). The Reconsideration Motion is properly before the Court.

Next, Defendant argues that Plaintiff's Reconsideration Motion is improper as it is an end run around the Court's previous ruling that New Mexico insurers do not have an underwriting duty of care. The Court agrees with Defendant. First, the Court observes that Plaintiff did not plead any elements of detrimental reliance in her Complaint, and so did not give Defendant adequate notice of that claim under Federal Rule of Civil Procedure (Rule) 8, which bars Plaintiff from raising it now. Second, even if properly pled, Plaintiff's argument, though now clothed as a detrimental reliance claim, is yet another iteration of her previously dismissed negligence claim.

### A. *Plaintiff did not plead the necessary elements of detrimental reliance*

Under Rule 8, a pleading must state a "short and plain statement of the claim showing that the pleader is entitled to relief." The claim must be facially plausible by pleading "factual content that allows the court [a] reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007)). In her Reconsideration Motion, Plaintiff asks that the Court admit evidence that the policies are replacement policies because the evidence is core to her theories of detrimental reliance and twisting.

To plead detrimental reliance or promissory estoppel, a party must allege:

> (1) An actual promise must have been made which in fact induced the promisee's action or forbearance; (2) The promisee's reliance on the

9

>promise must have been reasonable; (3) The promisee's action or forbearance must have amounted to a substantial change in position; (4) The promisee's action or forbearance must have been actually foreseen or reasonably foreseeable to the promisor when making the promise; and (5) enforcement of the promise is required to prevent injustice.

*Strata Prod. Co. v. Mercury Expl. Co.*, 916 P.2d 822, 827-28 (N.M. 1996) (citations omitted). In Plaintiff's summation of her contract claim, Plaintiff alleges:

>Zurich intentionally and wrongfully sought to avoid its obligations under the contract by purporting to rescind the contract despite the information provided by Mark Salopek about his family's medical history, including information about his drinking habits and his occasional use of chewing tobacco.

*See* Complaint (Doc. 1-1) ¶ 68. Notably, Plaintiff's allegations focus on the truth or falsity of Mr. Salopek's statements in the Application. But nothing in this paragraph alleges that Plaintiff detrimentally relied on an actual promise made by Defendant. The paragraph also does not mention that Defendant's Policy was a replacement policy, nor does it make further reference to the two vested policies.

Without plainly stating so, Plaintiff implies that detrimental reliance is incorporated through ¶ 32 of her Complaint. Paragraph 32 states: "Mr. Salopek did not give up his fully vested $15,000,000 insurance policy until Zurich promised to issue a new life insurance policy with $ 15,000,000 in life insurance coverage that would replace the vested policies." *Id.* While this paragraph acknowledges the relinquishment of vested policies and asserts that Defendant made a promise *to issue* a new life insurance policy, the language does not include allegations that Defendant made an actual promise to abnegate its statutory right to rescind.

Plaintiff argues that Defendant's conduct in accepting the Application functioned as an unconditional promise to abandon its rescission rights. Even if mere acceptance of an application could function as a promise (and Plaintiff has not based this argument on any New Mexico law or

10

caselaw), Plaintiff has not pled any factors indicating that Mr. Salopek's reliance was reasonable. Notably, the express terms of the Policy state that *the Policy may be rescinded* within a two-year period if there are misrepresentations in the Application. Plaintiff does not allege that Mr. Salopek was unaware of the Incontestability Provision. Nor does anything in the Complaint allege that Defendant made an actual promise that it would not enforce the Incontestability Provision, or even if there had been such an oral representation, that Plaintiff's reliance was reasonable despite inapposite express contractual terms.

Alternatively, Plaintiff appears to argue that detrimental reliance is imported into a contract claim through a New Mexico regulation[17] implementing a New Mexico statute banning twisting. The Unfair Trade Practices Act defines and prohibits twisting as:

> [A]ny written or oral statement misrepresenting or making misleading comparisons as to the terms, conditions, benefits or advantages of any policy for the purpose of inducing or attempting or tending to induce any other person to lapse, forfeit, surrender, borrow against, retain, exchange, convert or otherwise deal with or dispose of any policy.

NMSA 1978, § 59A-16-6. Although Plaintiff did plead claims under the Unfair Trade Practices Act, she did not plead twisting. Moreover, early in these proceedings, the Court denied Plaintiff's motion to amend[18] her Complaint to include a churning claim. Churning is another term for twisting. *See IDS Life Ins. Co. v. Royal All. Assocs., Inc.*, 266 F.3d 645, 52 (7th Cir. 2001) (twisting "also known as 'flipping,' 'churning,' and 'replacement'"). Significantly, Plaintiff's attempt to amend her Complaint is a tacit acknowledgement that her Complaint did not allege twisting and thus, failed to give Defendant notice of a twisting claim. Most importantly, the Court denied

---

[17] Plaintiff does not explain how a regulation can have relevance apart from the applicable statute.
[18] *See* PLAINTIFF'S MOTION FOR JOINDER AND FOR LEAVE TO FILE AMENDED COMPLAINT TO ADD FACTUAL ALLEGATIONS AGAINST CAPITAL ASPECTS, LLC, A NEW MEXICO COMPANY, AHMAD HASHEMIAN, AND MIGUEL LUIS SISNIEGA (Doc. 38) at 2, 5.

Plaintiff's churning claim as improper due to undue delay.[19] The Court concludes that Plaintiff's twisting argument is an attempt to constructively amend her Complaint.[20] The Court will not revisit that ruling here.

### B. *Plaintiff's detrimental reliance claim fails as a matter of law*

Even if Plaintiff's detrimental reliance claim had been properly pled, it is yet another improper attempt by Plaintiff to reintroduce a theory unsupported by New Mexico law. According to Plaintiff, Defendant's acceptance of the Application and knowing issuance of a replacement Policy constituted a promise that Defendant had performed a certain type of underwriting. That knowledge, Plaintiff theorizes, created a corresponding duty upon which Mr. Salopek detrimentally relied. The Court has already considered and rejected the premise on which this argument depends.[21]

New Mexico does not impose an underwriting duty on an insurer.[22] In a strained reframing of the Court's ruling, Plaintiff now argues that although an insurer does not have a general underwriting duty, an insurer has a specific duty that is "reasonable under the circumstances." Plaintiff posits that when an insurer knows that a policy is a replacement policy, only underwriting that thoroughly examines all facets of an application could ever be reasonable. Once again, and

---

[19] *See* Memorandum Opinion and Order (Doc. 109) at 14.
[20] The Court further observes that even if it were appropriate to introduce a twisting claim, it is unclear how Defendant's conduct in accepting the Application is relevant. The prohibited behavior involves an oral or written statement, not conduct.
[21] *See* Memorandum Opinion and Order (Doc. 181).
[22] Plaintiff frequently relies on what she calls "controlling Tenth Circuit authority" expressed in cases such as *Major Oil Corp. v. Equitable Life Assur. Soc. of U.S.,* 457 F.2d 596 (10th Cir. 1972). *See e.g.*, Letter Brief dated July 15, 2020 (Doc. 290) at 1. *Major Oil Corp* is an analysis of Utah law. The Court reminds Plaintiff that the controlling substantive law in this case is *New Mexico law*. A Tenth Circuit case that analyzes Utah insurance law or any law other than that of New Mexico is not controlling here. The Court cautions Plaintiff that it will not allow incorrect representations of the law or of its prior rulings, which disappointingly is a common theme throughout Plaintiff's briefing as well as her arguments during motions hearings. *See* pg. 8 *infra*.

despite the Court's thorough discussion of this case, Plaintiff cites to *Ellingwood v. N.N. Inv'rs Life Ins. Co.*, 805 P.2d 70 (N.M. 1991) for this argument.

Contrary to Plaintiff's repeated assertions, *Ellingwood does not* require or obligate insurers to do a certain kind of underwriting when a policy is a replacement policy. *Ellingwood* discusses the circumstances that may put an insurer on inquiry notice that the facts are not as an application represents. *Ellingwood* concludes that an insurer's decision not to investigate suspicious assertions in an application may function as a ***waiver*** to its legal right to claim that it was not aware of the pertinent information or that those assertions were material to its issuance of the policy. *Id* at 77 (holding "If the company was sufficiently alerted to [the medical condition], it either should have availed itself of the opportunity to review the records made available to it by the applicant, or be charged with notice of the information in those records."). Plaintiff's argument misconstrues this case by conflating the legal concepts of duty and waiver.

A duty is an ***obligation*** recognized by law that one party owes to another. *See Herrera v. Quality Pontiac*, 73 P.3d 181 (N.M. 2003) ("[A] duty 'establishes the legally recognized obligation of the defendant to the plaintiff.'") (quoting *Ramirez v. Armstrong*, 673 P.2d 822, 825 (N.M. 1983)). In contrast, a waiver is a ***relinquishment*** of a known right. *State v. Padilla*, 46 P.3d 1247, 1254 (N.M. 2002) ("'A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege' which must be made in a knowing and voluntary manner.") (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938)). While the first describes a legal relationship between two parties, the latter describes a voluntary action by one of the parties that impacts only its own legal rights.

New Mexico case law and statutes do not recognize a general or specific underwriting duty. The determinate issue when evaluating whether a rescission was proper is whether the insurer

waived its right to claim that an applicant's asserted misstatement was material. While a jury could find that the facts suggest Defendant waived its right to rescind, a jury could not base that finding on a duty that *does not* exist at law. Because Defendant did not have an underwriting duty, Mr. Salopek could not have relied on it to his detriment.

Next, Plaintiff argues that Mr. Salopek's purchase of the Policy to replace his two vested policies is relevant because those policies show that Mr. Salopek had multiple applications. According to Plaintiff, in the insurance industry, multiple applications are a red flag that are evidence of inquiry notice. Assuming *arguendo*, that this is true, that fact does not make evidence about replacement policies particularly relevant. Multiple applications are not categorically the same thing as replacement applications. The first is a general category that includes the second more specific class. The Court's ruling prohibiting evidence that the Policy was a replacement policy does not bar Plaintiff from introducing evidence that generally Mr. Salopek submitted multiple applications for life insurance policies.

Finally, the Court finds that to the extent that any evidence that two vested policies were replaced by Defendant's Policy is appropriate, its evidentiary relevance is marginal. Moreover, the probative value of such evidence is substantially outweighed by its potential unfair prejudice. There is a significant danger that the knowledge that Mr. Salopek gave up two policies that would have paid $15,000,000 after his death for a policy Defendant rescinded would unduly prejudice a jury. Such information may dissuade the jury from giving appropriate weight to germane evidence regarding whether there were misrepresentations in the Application and whether Defendant had inquiry notice of those misrepresentations and so waived its right to assert them as a basis for rescission.

IT IS ORDERED THAT:

1. As stated orally at the pretrial conference held on March 9, 2020, DEFENDANT ZURICH AMERICAN LIFE INSURANCE COMPANY'S OMNIBUS MOTION IN LIMINE (MOTIONS IN LIMINE #1-#3) (Doc. 207) is GRANTED;

2. PLAINTIFF'S RENEWED OPPOSITION TO ZURICH'S MOTION IN LIMINE #1, TO EXCLUDE EVIDENCE OF REPLACEMENT INSURANCE POLICY (Doc. 292) is DENIED;

3. As stated orally at the pretrial conference on March 9, 2020, the Court will reserve ruling on PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE AUDIO RECORDING OF MARK SALOPEK (Doc. 208).

_____
SENIOR UNITED STATES DISTRICT JUDGE