# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

MARCIE SALOPEK, Trustee for
THE SALOPEK FAMILY HERITAGE TRUST
          Plaintiff,

v.                                              NO. 18-CV-00339 JAP/CG

ZURICH AMERICAN LIFE INSURANCE
COMPANY,
          Defendant

## MEMORANDUM OPINION AND ORDER

In February 2020, Plaintiff Marcie Salopek, Trustee for The Salopek Family Heritage Trust (Plaintiff) and Defendant Zurich American Life Insurance Company (Defendant) filed motions in limine seeking to exclude the qualifications of the opposing parties' proposed experts: Defendant's expert Charles McAleer, and Plaintiff's experts Vera Dolan and Don Kelley.[1] The Motions are fully briefed.[2]

---

[1] *See* MOTION TO EXCLUDE ZURICH'S EXPERT CHARLES MCALEER, III (Doc. 216 & 217) (Mot. to Exclude McAleer); DEFENDANT ZURICH AMERICAN LIFE INSURANCE COMPANY'S MOTION TO PRECLUDE VERA DOLAN FROM OFFERING CERTAIN EXPERT OPINIONS AT TRIAL (Doc. 218) (Mot. to Limit Dolan); and DEFENDANT ZURICH AMERICAN LIFE INSURANCE COMPANY'S MOTION TO PRECLUDE DON KELLEY FROM TESTIFYING AS AN EXPERT AT TRIAL (Doc. 219) (Mot. to Exclude Kelley). The Court will refer to two remaining motions as Qualifications Motions.

[2] *See* DEFENDANT ZURICH AMERICAN LIFE INSURANCE COMPANY'S OPPOSITION TO PLANTIFF'S MOTION TO EXCLUDE ZURICH'S EXPERT CHARLES MCALEER, III (Doc. 233); PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE ZURICH'S EXPERT CHARLES MCALEER, III (Doc. 254); PLAINTIFF'S OPPOSITION TO DEFENDANT ZURICH AMERICAN LIFE INSURANCE COMPANY'S MOTION TO PRECLUDE VERA DOLAN FROM OFFERING CERTAIN EXPERT OPINIONS AT TRIAL (Doc. 229); DEFENDANT ZURICH AMERICAN LIFE INSURANCE COMPANY'S REPLY IN SUPPORT OF MOTION TO PRECLUDE VERA DOLAN FROM OFFERING CERTAIN EXPERT OPINIONS AT TRIAL (Doc. 231); PLAINTIFF'S OPPOSITION TO DEFENDANT ZURICH AMERICAN LIFE INSURANCE COMPANY'S MOTION TO PRECLUDE DON KELLEY FROM OFFERING CERTAIN EXPERT OPINIONS AT TRIAL (Doc. 230); DEFENDANT ZUIRCH LIFE INSURANCE COMPANY'S REPLY IN SUPPORT OF MOTION TO PRECLUDE DON KELLEY FROM TESTIFYING AS AN EXPERT AT TRIAL (Doc. 252).

On March 9, 2020, the Court held a pretrial conference.[3] Peter Selvin, Pooja Nair, Jamison Shekter, and Randi McGinn appeared for Plaintiff, and John Jacobus, Dan O'Brien, and John Kavanaugh appeared for Defendant. At that time, the Court orally denied Plaintiff's Mot. to Exclude Charles McAleer,[4] took the remaining Qualifications Motions under advisement, and directed the parties to meet, confer, and examine whether after the Court's ruling on Plaintiff's Bad Faith claim the parties still disagreed about their expert's qualifications.[5]

On May 19, 2020, the Court entered a scheduling order advising the parties to inform the Court in writing by July 1, 2020 whether the parties continued to dispute the qualifications of proposed experts Mr. Kelley and Ms. Dolan.

On July 1, 2020, Defendant filed a letter brief and appendix indicating that Defendant maintained its stated position in Defendant's Mot. to Exclude Don Kelley and Mot. to Limit Dolan.[6] Plaintiff responded to Defendant's letter brief with a letter indicating that she had not understood the Scheduling Order to authorize additional briefing and asked the Court permission to respond by July 15, 2020.[7] On July 6, Defendant responded to Plaintiff's letter, arguing that the Scheduling Order contemplated simultaneous briefing by July 1, 2020.[8] Plaintiff responded to this letter on July 7, 2020.[9]

---

[3] Trial had been set for March 30, 2020. But that trial was continued as were all jury trials scheduled to commence before April 10, 2020, pending further order of the Court. *See* Order (Doc. 278).
[4] See Transcript of Pretrial Hearing March 9, 2020 (Doc. 294) 41:16–21.
[5] At that hearing, the Court also announced its ruling denying PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE PRINCIPAL-AGENT RELATIONSHIP BETWEEN DEFENDANT ZURICH AMERICAN LIFE INSURANCE COMPANY, BGA INSURANCE, AND LUIS MIGUEL SISNIEGA (Doc. 191) and granting in part and denying in part DEFENDANT ZURICH AMERICAN LIFE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT (Doc. 193). The oral ruling was memorialized in a written MEMORANDUM OPINION AND ORDER (Doc. 275) (SJ MOO); *see also Salopek, Tr. for Salopek Family Heritage Tr. v. Zurich Am. Life Ins. Co.*, 446 F. Supp. 3d 886 (D.N.M. 2020).
[6] *See* Letter Brief dated July 1, 2020 (Doc. 284) (Letter Brief dated July 1, 2020).
[7] *See* Plaintiff's Letter Response dated July 6, 2020 (Doc. 285).
[8] *See* Defendant's Letter Response dated July 6, 2020 (Doc. 286).
[9] *See* Plaintiff's Letter Brief dated July 7, 2020 (Doc. 287).

On July 14, 2020, the Court entered an order permitting additional briefing on the Qualifications Motions.[10] Subsequently, on July 15, 2020, Plaintiff filed a letter brief, responding to Defendant's July 1, 2020 Letter Brief.[11] Defendant replied on July 29, 2020.[12]

On August 28, 2020, the Court held a Daubert hearing by Zoom on Defendant's objections to Mr. Kelley's proffered testimony.[13] Present at the hearing for Plaintiff were Randi McGinn and Jamison Shekter and for Defendant, John Kavanagh, Dan O'Brien, John Jacobus, and Johanna Dennehy.

After reviewing all briefings and considering Mr. Kelley's testimony and the parties' arguments at the Daubert Hearing, the Court will grant Defendant's Mot. to Exclude Kelley from Testifying. Pending further briefing, the Court will take Defendant's Mot. to Limit Dolan under advisement.

## PROCEDURAL HISTORY AND BACKGROUND

The factual background of this case has been well-documented, and the Court will not repeat it fully here. In short, this is a breach of contract case, focusing on whether Defendant properly rescinded an insurance policy issued to Mr. Mark Salopek because of Mr. Salopek's alleged misrepresentations in the policy application about his alcohol and tobacco use.

On March 6, 2018, Plaintiff filed a five-count Complaint in New Mexico state court against Defendant, alleging the following claims: Count I, Breach of Contract; Count II, Bad Faith Insurance Conduct; Count III, Violation of Unfair Insurance Practices Act; Count IV, Violation of

---

[10] *See* Scheduling Order (Doc. 289).
[11] See Plaintiff's Letter Brief dated July 15, 2020 (Doc. 290) (Response Letter Brief).
[12] See Defendant's Letter Brief dated July 29, 2020 (Doc. 296) (Reply Letter Brief).
[13] Within this Memorandum Opinion and Order the Court will cite to an unofficial transcript of this hearing as Unofficial Transcript of August 28, 2020 Hearing.

Unfair Trade Practices Act; and Count V, Negligence. On April 11, 2018, Defendant answered the Complaint and removed the case to federal court based on diversity under 28 U.S.C. § 1332.[14]

On December 11, 2019, the Court dismissed three of Plaintiff's claims: Count III, Violation of Unfair Insurance Practices Act; Count IV, Violation of Unfair Trade Practices Act; and Count V, Negligence.[15] In January 2020, the parties filed competing motions for summary judgment.[16] Defendant asked the Court for summary judgment on the two remaining counts: Count I, Breach of Contract and Count II, Bad Faith Insurance Conduct, while Plaintiff asked the Court to determine the principal-agent relationship between Defendant and two non-party insurance brokers or agents. The Court partially granted Defendant's summary judgment motion and dismissed Count II, Bad Faith, and denied Defendant's motion at to Count I, Breach of Contract. The Court denied Plaintiff's partial summary judgment motion, finding that whether nonparties had functioned as brokers or agents was a disputed issue of material fact.[17]

## ANALYSIS

Before the Court in this diversity proceeding are motions concerning the admissibility and relevance of proposed expert testimony. "[I]n a federal diversity action, the district court applies state substantive law—those rights and remedies that bear upon the outcome of the suit—and federal procedural law—the processes or modes for enforcing those substantive rights and remedies." *Los Lobos Renewable Power, LLC v. Americulture, Inc*., 885 F.3d 659, 668 (10th Cir. 2018) *cert. denied sub nom. AmeriCulture, Inc. v. Los Lobos Renewable Power*, LLC, 139 S. Ct.

---

[14] *See* DEFENDANT ZURICH AMERICAN LIFE INSURANCE COMPANY'S ANSWER AND DEFENSES TO PLAINTIFF'S COMPLAINT (Doc. 10) and NOTICE OF REMOVAL (Doc. 1).
[15] *See* MEMORANDUM OPINION AND ORDER (Doc. 181) (Pleadings MOO); *see also Salopek, Tr. for the Salopek Family Heritage Tr. v. Zurich Am. Life Ins. Co.*, 428 F. Supp. 3d 609 (D.N.M. 2019).
[16] *See* PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE PRINCIPAL-AGENT RELATIONSHIP BETWEEN DEFENDANT ZURICH AMERICAN LIFE INSURANCE COMPANY, BGA INSURANCE AND LUIS MIGUEL SISNIEGA (Doc. 191); DEFENDANT ZURICH AMERICAN LIFE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT (Doc. 193).
[17] *See* SJ MOO (Doc. 275).

591 (2018). Plaintiff's sole remaining count is a breach of contract claim which involves an insurance policy executed in New Mexico.

Under New Mexico law, "[t]he elements of a breach-of-contract action are the existence of a contract, breach of the contract, causation, and damages." *Abreu v. New Mexico Children, Youth & Families Dep't*, 797 F. Supp. 2d 1199, 1247 (D.N.M. 2011) (further citation omitted). Plaintiff argues that Defendant breached the contract when it rescinded the Policy based on purported misrepresentations by Mr. Salopek. Rescission of an insurance policy is "allowed where there has been a misrepresentation of a material fact, the misrepresentation was made to be relied on, and has in fact been relied on." *Prudential Ins. Co. of Am. v. Anaya,* 428 P.2d 640, 643 (N.M. 1967).

Plaintiff's claim focuses on the events that occurred at the time Mr. Salopek applied for a policy and Plaintiff disputes whether the application contained material misrepresentations. In considering the materiality of any misrepresentations, the jury may be asked to make findings on whether the individual who signed the application, Mr. Luis Sisniega, functioned in the transaction as an agent or as a broker. See SJ MOO (Doc. 275) pp. 14–16. Plaintiff frames the issues for trial as:

1. Whether Mark Salopek misrepresented his use of alcohol and tobacco in his application;
2. Whether Zurich relied on the representations in the application concerning Mr. Salopek's use of tobacco and alcohol;
3. Whether Zurich has actual or imputed knowledge because of the actions of its agent Luis Sisniega and is therefore estopped from claiming reliance on any misrepresentations on the Application in denying payment of Policy benefits.[18]

*See* Plaintiff's Letter Brief dated July 15, 2020 (Doc. 290) at 1-2. Plaintiff argues that the complexity of these questions requires an expert to testify about how an application is assessed

---

[18] Although Plaintiff's summation of the issues is paraphrased in part from the Court's SJ MOO, the Court's summation here does not ratify Plaintiff's statement of the issues.

prior to acceptance (underwriting), how a policy claim is managed (claim processing and/or rescission), and the industry distinction between insurance agents and brokers (agent/brokers).

Plaintiff proffers two experts, Don Kelley and Vera Dolan, to testify about aspects of the insurance industry. "[T]he distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *United States v. Yeley-Davis*, 632 F.3d 673, 684 (10th Cir. 2011) (further citation omitted). But expert testimony must be "both reliable and relevant." *Alfred v. Caterpillar, Inc*. 262 F.3d 1083, 1086 (10th Cir. 2001). Toward this end, courts act as gatekeepers. *Id.* "This gatekeeper function requires the judge to assess the reasoning and methodology underlying the expert's opinion, and determine whether it is scientifically valid and applicable to a particular set of facts." *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000) (citing *Daubert v. Merrill Dow Pharm.*, *Inc.,* 509 U.S. 579, 592 (1993)).

The Court's gatekeeping function involves a two-step inquiry. *See United States v. Nacchio,* 555 F.3d 1234, 1241 (10th Cir. 2009) (*en banc*). First, the Court will evaluate the witness's qualifications.  Second, the Court will analyze the reliability of the proffered opinion. *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). While substantive New Mexico law is relevant to a federal court's examination of issues of contractual interpretation, a federal court's scrutiny of expert testimony is governed by federal law.  *See Hall v. Conoco Inc*., 886 F.3d 1308, 1311 (10th Cir. 2018).

### A. Don Kelley

Plaintiff submits Mr. Kelley as an expert on claim rescission and agent/brokers.[19] Defendant objects to Mr. Kelley's testimony, arguing that 1) testimony about claim rescission is not relevant; and 2) Mr. Kelley is not an expert about agent/brokers.[20]

#### *1. Qualifications*

The Court begins its assessment of Mr. Kelley's qualifications by determining whether "[Mr. Kelley] is qualified by knowledge, skill, experience, training, or education to render an opinion." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

Since 1961, when he began working as a manager at Pacific Mutual Life Insurance, Mr. Kelley has worked in the insurance field. Until 1968, he was responsible for policy changes and disbursements. After attending Southwestern University School of Law, Mr. Kelley shifted to working as counsel in the legal department of various insurance companies until he entered private practice in 1986. For a brief period, from 2011 to 2013, Mr. Kelley worked as general counsel at an insurance company. As legal counsel for insurance companies, Mr. Kelley was responsible for reviewing claim processing and rescission and defense of claims related litigation. From 1988-1991, Mr. Kelley worked as a third-party ERISA claims administrator. Mr. Kelley is now in private practice.

Mr. Kelley has taught various aspects of insurance at several places: insurance law at Southwestern University School of Law; principles of life and health insurance and the law of life

---

[19] Although Mr. Kelley opines about underwriting in his report, both he and Plaintiff have stated that he will not be offered as an expert on underwriting. *See* Unofficial Transcript dated August 28, 2020, 26:20–22, 28:4–6.

[20] Defendant also argues that the Court should prohibit Mr. Kelley from testifying about agent/brokers as he was not initially offered as an expert witness on this subject but later, after discovery closed, he proffered an opinion by an untimely supplemental report. Mr. Kelley's testimony, Defendant argues, will prejudice it, because it will force Defendant to take the expense and time of re-deposing Mr. Kelley. Because the Court is granting Defendant's motion on other grounds, it will not examine this argument here.

and health at Life Office Management Association; and claims practices and procedures at the International Claims Association.

Mr. Kelley has testified as an expert witness in insurance related cases on more than sixty occasions in both federal and state court.[21] The Court agrees that Mr. Kelley's long career in the insurance industry working both as in-house counsel and as a teacher indicates that he is qualified to be an expert about general insurance issues. But that does not conclusively decide whether Mr. Kelley is qualified to testify about every matter within that general category. *See City of Hobbs v. Hartford Fire Ins. Co.,* 162 F.3d 576, 587 (10th Cir. 1998) (finding that the district judge did not abuse his discretion when he refused to admit an expert's proffered testimony on bad faith because the expert lacked specialized knowledge about handling bad faith cases in New Mexico involving third party insurance disputes) (citing *Broadcort Capital Corp. v. Summa Med. Corp.*, 972 F.2d 1183, 1195 (10th Cir. 1992)) (further citation omitted).

The purpose of expert testimony is to assist the trier of fact. "Though a proffered expert possesses knowledge as to a general field, the expert who lacks specific knowledge does not necessarily assist the jury." *Hartford Fire Ins. Co.,* 162 F.3d at 587 (10th Cir. 1998). Here, Plaintiff tenders Mr. Kelley as an expert on claim processing and rescission and on how the insurance marketplace categorizes agent/brokers. Mr. Kelley's experience in reviewing and counseling insurance companies about claim rescission indicates that he is qualified to testify as an expert on

---

[21] Mr. Kelley has been disqualified as an expert witness is at least two cases. *See Mouradian v. Bankers Multiple Line, Ins.* Co., 96 F.3d 1451 (9th Cir. 1996) (table) (concluding the district court did not err when it excluded Kelley's testimony under Rule 702 because his "curriculum vitae did not specifically mention any underwriting experience, he had not worked in the insurance business for almost thirty years, and his proffered testimony was borderline legal opinion); *Bancroft v. Minn. Life Ins. Co.*, 329 F. Supp. 3d 1236, 1250 (W.D. Wash. 2018) (excluding Mr. Kelley's opinions because "he lacks the necessary medical expertise or because he offers legal opinions or interpretations of the Policy").

that subject.[22] In contrast, there is little support for Plaintiff's assertion that Mr. Kelley is an expert about agent/brokers.

Whether an individual operates as an agent or broker may be established by licensure, by individual factual circumstances, or by both. How agents and brokers are categorized relies in part on state law and varies from state to state. Mr. Kelley's report indicates that he bases his knowledge of agent/brokers categories in New Mexico on his recent perusal of New Mexico statutes and caselaw. Missing from Mr. Kelley's curriculum vitae, his report, or his testimony is any foundation for Plaintiff's pronouncement that he has specialized knowledge based on his skills or experience about agent/brokers and their classification and operation in the insurance industry. Significantly, in asserting his expertise, Mr. Kelley does not disclose (1) whether he dealt with agent/broker classifications in his work in the insurance industry or more specifically in New Mexico; (2) whether he was aware generally how other states may view agent/brokers and how that might differ from New Mexico; or (3) whether or how different licensure may impact the relationship between agent/brokers and applicants.

Even if Mr. Kelley understands agent/broker licensure law, that knowledge does not irrefutably demonstrate specialized knowledge about how agent/brokers function in the insurance marketplace. The burden is on the Plaintiff to demonstrate that the witness is qualified to testify as an expert on this issue. Plaintiff has not done so. The Court concludes that Plaintiff has not established that Mr. Kelley has qualifications through skill, experience, or training to testify about agent/brokers in the New Mexico insurance market.

---

[22] Plaintiff argues that Mr. Kelley is an expert about both claim rescission and about claim processing. It is less clear if Mr. Kelley is an expert on claim processing, but since the Court finds that neither claim rescission nor claim processing is relevant to the sole count remaining here, the Court will not address this issue further.

### 2. *Relevance and Reliability*

      i.    Mr. Kelley's testimony about rescission and claim processing is not relevant.

After determining that an expert is qualified, a Court must evaluate the witness' opinions under the guidelines set forth in *Daubert,* 509 U.S. 579 and *Kumho Tire* Co*.,* 526 U.S. 137. *See Ralston*, 275 F.3d at 969. To be admissible, evidence must be both reliable and relevant. *Delsa Brook Sanderson v. Wyoming Highway Patrol,* 976 F.3d 1164, 1168 (10th Cir. 2020) (quoting *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006). Evidence is reliable when an expert's opinions are supported by sound reasoning and methodology." *F & H Coatings, LLC v. Acosta*, 900 F.3d 1214, 1222 (10th Cir. 2018). Evidence is relevant when it helps "the trier of fact to understand the evidence or to determine a fact in issue." *Delsa Brook Sanderson*, 976 F.3d at 1168 (quoting *Daubert*, 509 U.S. at 591). As the proponent of the expert, Plaintiff bears the burden to establish by a preponderance of the evidence that the requirements for admissibility have been met. *Nacchio,* 555 F.3d at 1251.

Plaintiff offers Mr. Kelley's testimony to clarify insurance industry customs and standards when processing a claim and when determining whether rescission is appropriate. Mr. Kelley asserts that Defendant could not have reasonably rescinded the policy unless or until it completed a thorough underwriting as defined by industry customs and standards, and that Defendant's rescission of the Policy could not be reasonable when Plaintiff renounced his vested policies in reliance on Defendant's issuance of the Policy. Defendant counters that Mr. Kelley's testimony is irrelevant as it concerns matters not at issue. The Court agrees.

Questions about whether an insurance policy was reasonably underwritten or rescinded are not contractual questions but rather are tort questions *See Chavez v. Chenoweth*, 553 P.2d 703, 708-08 (N.M. Ct. App. 1976) (explaining the difference between an insurance policy breach of

10

contract claim and a bad faith claim). And the Court has ruled on both of these issues. In the Pleadings MOO, the Court concluded that as a matter of law, in New Mexico, Defendant does not have an underwriting duty toward an applicant. Later, in the SJ MOO, the Court found that Plaintiff had not met her burden to rebut Defendant's showing that there were no genuine issues of material fact as to any element of Plaintiff's bad faith claim. SJ MOO (Doc. 275) p. 30. Because the Court has resolved the issue of the reasonableness of Defendant's rescission and/or claim processing, testimony about the rescission process and the custom and norms of the insurance industry is irrelevant.

Plaintiff also argues that industry customs and standards are relevant to an inquiry about whether Defendant is detrimentally estopped from rescinding the Policy because after Defendant issued the Policy, Mr. Salopek renounced his vested interests in two other policies in reliance on the new Policy. The Court has considered, reconsidered, and rejected this argument on two bases.[23] First, the Court found that Plaintiff did not plausibly plead detrimental reliance. *See* Reconsideration MOO (Doc. 310) pp. 9–12. Next, the Court concluded that Plaintiff's detrimental reliance claim is simply another iteration of Plaintiff's bad faith claim. *Id.* pp. 12–15.

        ii.    Mr. Kelley's proffered testimony about agent/broker categories is not reliable or relevant

Next, the determination of whether the individuals who helped Mr. Salopek with the Application functioned as agents or brokers is a factual question for the jury. To help the jury understand the industry differences between agents and brokers, both Plaintiff and Defendant seek to introduce expert testimony. Although the Court has found that Mr. Kelley has not demonstrated that he is qualified to testify about agent/brokers classifications in the insurance marketplace, the Court further finds that even if Mr. Kelley were qualified to be an expert about agent/brokers,

---

[23] *See* MEMORANDUM OPINION AND ORDER (Doc. 310) (Reconsideration MOO).

Plaintiff has not established that Mr. Kelley's proffered testimony about agent/brokers is relevant or based on a sound methodology.

In his report, Mr. Kelley states that he analyzed the following documents: the Complaint; the Claim File; the Claim Manual; Deposition transcripts and exhibits of William Guterding, Aaron Paget, Marcie Salopek, Luis Sisniega, Edward Summer, Michelle Johnson and Ahmad Hashemian; The Expert Executive Summary of Vera F. Dolan, the Affidavit of Stan Miller, New Mexico Uniform Jury Instructions including what constitutes agency; and selected New Mexico cases concerning insurance bad faith and imputations of an agent's knowledge and actions to an insurance company. He has also reviewed memos, e-mails, power points, spreadsheets, and financial statements concerning Defendant's operations. Finally, Mr. Kelley examined what he described as "a letter of appointment" and a contract between Defendant and Mr. Sisniega.[24] *See* Unadmitted Supplemental Report, pp. 1–3; *see also* Mot. to Exclude Kelley (Doc. 219-1) pp. 3-5.

Based on this information, Mr. Kelly makes the following factual assertions:

Sisniega admitted in his deposition that he was Zurich's agent in all of his dealings with the Mark Salopek Application. The written agreement he signed with Zurich in November of 2014 and which was still in effect at the end of 2015 confirms he was Zurich's agent and authorized by the company to obtain and submit applications for life insurance with Zurich.

Although Zurich's agent, Sisniega, claims to have been called by Hashemian on November 4, 2015 and claims to have driven from El Paso to Las Cruces, where he met Mark Salopek at his office, this appears not to be true. The story he tells in his deposition is internally inconsistent and is inconsistent with the stories given by Hashemian. He is unable to produce any e-mail, text message, phone record, calendar entry, or business record which would confirm his meeting with Mark Salopek and is unable to describe the inside of Mr. Salopek's office where he claims to have spent an hour, other than to say it had "a desk." Sisniega admits to never having met the one living Salopek, Marcie, even though he signed the application forms (and later the claims form), falsely indicating he had witnessed her signature.

---

[24] At the Daubert Hearing, Plaintiff tendered Mr. Kelley's resume and Supplemental Report. The Court admitted Mr. Kelley's resume, but did not admit the Supplemental Report. Because the Supplemental Report provides the basis for Mr. Kelley's assertions, the Court quotes it here as "Unadmitted Supplemental Report."

*Id.* at 14, 4. Mr. Kelley sets forth the following opinions:

> Misconduct by its own agents or employees prevents the insurance company from rescinding the policy
>
> Luis Sisniega was Zurich's actual agent in all his actions in this case.

*See* Letter Brief dated July 1, 2020, Ex. 2 (Doc. 284-2) at 5. Accordingly, Mr. Kelley offers the following conclusion:

> Because of the actions of its own agent and underwriting employee, Zurich should have honored its contract of insurance and paid the Salopek Family Trust the $15 million in life insurance when the claim was submitted rather than breaching its contract, rescinding its policy, and returning the $405,915.05 premium.

*Id.* at 6. Defendant argues that Mr. Kelley's assertions, opinions, and conclusions do not provide context but are improper legal opinions about ultimate issues. Plaintiff counters that Mr. Kelley's expertise makes it legally permissible for him to opine on the ultimate issue about whether Mr. Sisniega was an agent or a broker when Mr. Salopek applied for Defendant's policy. According to Plaintiff, Mr. Kelley is merely testifying as to how the insurance industry would determine this question when evaluating whether to rescind a policy.

Reliable expert testimony must be supported by sound reasoning and methodology with the goal of elucidating or providing a framework for the factual issues before a jury. *See Delsa Brooke Sanderson,* 976 F.3d at 1168. In the March 9, 2020 hearing, the Court advised the parties that experts on agent/broker relationships could testify about "functional things, how things work or should work, without expressing legal opinions." Transcript of March 9, 2020 (Doc. 294) 32:7–10. Significantly, Mr. Kelley does not offer any functional context for his opinion that Mr. Sisniega is an agent. In his report, Mr. Kelley does not explain the differences between agents and brokers and how they operate in the insurance marketplace. Rather, Mr. Kelley makes conclusions based solely on Mr. Sisniega's New Mexico licensure. Notably, the Court concluded in the SJ MOO that

13

as a matter of law, licensure is not determinative of this issue. *See* SJ MOO (Doc. 275) at 13 ("Rather it appears that in 2014, an individual may have been licensed as an agent, but how that individual actually functioned depended not on his or her license, but on whether an insurer "appointed" that individual as its agent."). Yet Mr. Kelley appears to be unaware of that ruling. *See* Unofficial Transcript of August 28, 2020 Hearing, p. 58:13–15.[25]

The jury is responsible for finding facts from disputed testimony and other evidence. Although an expert may help define the circumstances that could lead to a certain legal outcome—i.e. if "A," then "B"—the expert's role is confined to explaining the circumstances that may create "A." But it is the jury's role to find whether "A" occurred. In this case, while it is certainly appropriate for any expert to testify that certain circumstances usually indicate that an individual functioned as an agent or as a broker, it is not appropriate for an expert to inform the jury that the individual was either an agent or a broker.

Plaintiff argues that Mr. Kelley's conclusions about whether Mr. Sisniega was an agent or a broker is permissible because he is opining what an insurance company might conclude about Mr. Sisniega's function when evaluating a claim. Federal Rule of Evidence (Rule) 704 does permit experts to testify on ultimate issues. While an expert opinion on an ultimate issue is not automatically objectionable, "testimony which articulates and applies the relevant law, however, circumvents the jury's decision-making function by telling it how to decide the case." *Specht v. Jensen*, 853 F.2d 805, 806–808 (10th Cir. 1988) (finding that an attorney called as an expert witness could not state his views of the law that governed the verdict, nor could the attorney opine on whether that conduct violated the law). Mr. Kelley's testimony that Mr. Sisniega was Defendant's agent and that his actions bound Defendant are functionally legal conclusions.

---

[25] Mr. Kelley testified that he was not only unaware of the ruling but that he did not agree with it: [Mr. Kelley]: "I hate to do so, but I would slightly disagree with that ruling. And to answer your question no, I was unaware of it."

Significantly, Mr. Kelley has also admitted that his opinion that Sisniega is an agent is a legal opinion. *See* Mot. to Exclude Kelley, Ex. 2 (Doc. 219-2) (deposition of Mr. Kelley stating that his opinion that Sisniega is an agent "is a legal opinion. I'll grant you that").

Also troubling to the Court is Mr. Kelley's testimony at his deposition that anyone is qualified to give expert opinions based solely on information that person has read:

> THE WITNESS [Mr. Kelley]: But I could get a man off the street here in L.A. and have him read the file and reach a conclusion about whether someone met with someone else, right?
> A [-------]: And then that person would—
> Ms. Nair: Objection to form
> THE WITNESS: And then that person would become the expert, just as apparently I am in this particular case.

Mot. to Exclude Kelley (Doc. 219-2) pp. 57:21–25, 58:1–5. The Court finds these assertions particularly concerning as the only support Mr. Kelley has offered for his agent/broker expertise is his review of New Mexico law and cases. Moreover, Mr. Kelley's conclusion that reading a factual case file could make someone an expert about a case obviates the need for expert testimony. If jurors could similarly read and understand specific written materials, then they have no need for a mediator to explain that information to them. Because Mr. Kelley's expertise seems to be based not on his skills and experience, but only on his ability to read, an ability jurors share, the Court further finds that his opinions are based on an unreliable methodology.

Even if Mr. Kelley's opinions offered some authority on agent/broker relationships, the Court will exclude them under Rule 403. Under the standard articulated in Rule 403, a court may exclude expert testimony if the probative value of the testimony is "substantially outweighed" by the danger of misleading or confusing the jury. Mr. Kelley is a lawyer, which may give his conclusory statements undue authority and compel a jury to give unjustifiable weight to his testimony.

15

Finally, Plaintiff seeks to use Mr. Kelley as a rebuttal expert to Defendant's agent/broker expert. Because Mr. Kelley is not qualified to testify about agent/brokers and the Court has concluded that his testimony on the topic is both unreliable and irrelevant, he is not qualified to be a rebuttal expert.

### B.     Vera Dolan

At trial, Plaintiff intends to call Ms. Dolan to testify as an expert about underwriting. Defendant objects to the reliability and relevance of most of Ms. Dolan's opinions and asks the Court to narrow the scope of her testimony.

#### *1. Qualifications*

Ms. Dolan is a Fellow of the Academy of Life Underwriting. Since 1980, she has been the Principal of VFD Consulting, Inc. In that position, she provides "life and health insurance and related industries mortality and underwriting research." *See* Response to Mot. to Exclude Dolan, Ex. 2 (Doc. 231-1). From 1994-1997 she was a Contributing Editor to *On the Risk, Journal of the Academy of Life Underwriting*, and in 2004, she became an Associate Editor of that publication. *Id.* She has consulted and done research nationally for several companies. *Id.* She has published numerous articles on various insurance topics, including underwriting. *Id.* On several occasions, Ms. Dolan has appeared as an expert witness about underwriting.

Defendant does not dispute Ms. Dolan's qualifications as an underwriting expert. The Court concludes that Plaintiff has established that Ms. Dolan has qualifications through skill, experience, or training to testify about the specialized topic of underwriting.

### *2. Relevance and Reliability*

Plaintiff offers Ms. Dolan's testimony to explain to the jury how insurance companies use information in their possession during the underwriting process. Plaintiff separates Ms. Dolan's testimony into unenumerated bullet points,[26] which the Court summarizes as follows:

1. The objective medical evidence in Defendant's possession is "materially inconsistent with [Defendant's] assertion in its rescission decision that Mr. Salopek was excessively using alcohol" or "using daily and/or regular amounts of tobacco at the time of the application [bullet points 1 and 2];"
2. When rescinding Mr. Salopek's claim, Defendant "relied on false and unverified medical information of unknown source and authorship . . . about Mr. Salopek's possible alcohol and tobacco use that was materially inconsistent with evidence" [bullet point 3];
3. Defendant did not rely on representations in Mr. Salopek's application as they had other available information sources [bullet point 4];
4. "[Defendant's] underwriters could not have reasonably relied on the representations in Mr. Salopek's application about possible alcohol and tobacco use" because they had other sources of information and there were "red flags" of "increased replacement activity" [bullet point 5];
5. Defendant did not have a complete medical record file from Mr. Salopek's physicians when it approved the Application [bullet points 6 and 14];
6. Defendant did not test Mr. Salopek for alcohol markers at the time of his application although Defendant had "notice" that Mr. Salopek had "multiple indications of a history of abnormal alcohol marker tests results" [bullet points 7 and 8];
7. If Defendant had conducted an inquiry into the abnormal alcohol markers or followed up with a database inquiry, Defendant would have learned additional information about Mr. Salopek's alcohol use [bullet point 9];
8. Defendant did not follow its own guidelines when underwriting the Application [bullet point 10];
9. "[Defendant] had sufficient knowledge of material inconsistencies in Mr. Salopek's reported use of alcohol and tobacco" at the time of the application and so "could not have reasonably relied" on Mr. Salopek's answers in the Application about his alcohol and tobacco use [bullet point 11];
10. Defendant did not underwrite Mr. Salopek's Application with "sufficient care" because Defendant "failed to do its due diligence in underwriting at the time of the application and conducted post-claim underwriting on Mr. Salopek" [bullet points 12 and 13];
11. Defendant knew that there were signs of "ghost writing" in this case and so "relied on information from [an] unreliable source" [bullet point 15].

---

[26] In Plaintiff's brief, Ms. Dolan's testimony is summed up in 16 unenumerated "bullet points." As several of the first fifteen points were either echoed in separate statements about alcohol and then tobacco use or were reiterations of an obligation to do additional research, the Court has consolidated them into eleven. The sixteenth point indicates that Ms. Dolan will testify as a rebuttal witness.

*See* Letter Brief dated July 1, 2020, Ex. 2 (Doc. 284-2), pp. 1–5. Defendant does not object to Ms. Dolan's testimony about the underwriting process, agreeing that it is relevant and will be helpful to the jury. But Defendant opposes testimony that functions as a legal conclusion or addresses the following topics: 1) testimony that Defendant's conclusions were unreasonable; 2) testimony that Defendant should have obtained or had a duty to obtain more information; 3) testimony that Defendant should have followed its own guidelines; and 4) testimony that Defendant unreasonably rescinded the Policy. Defendant argues that such testimony is irrelevant given the Court's previous rulings. The Court agrees.

Much of Ms. Dolan's proposed testimony relies on her premise that Defendant had an underwriting duty, which Plaintiff describes as a duty to make a reasonable inquiry, to do due diligence, and to perform additional testing. But the Court has found that New Mexico does not impose an underwriting duty. Testimony about an inapplicable legal theory has no place at trial.

Similarly, the reasonableness of Defendant's actions under industry standards is also irrelevant. The sole remaining claim in this case is a breach of contract claim. The Court dismissed Plaintiff's bad faith claim, which is a tort claim. Evidence of industry standards under a reasonableness rubric supports a bad faith claim, s*ee, e.g*., NMRA, Rule 13-705 (stating "[i]ndustry [customs] [standards] are evidence of good or bad faith, but they are not conclusive."), but is not relevant to the central issue in this proceeding of whether Mr. Salopek made material misrepresentations in his Application. Moreover, while there may be underwriting standards in various states, such requirements do not exist in New Mexico statutes or caselaw. The Court concludes that Plaintiff may offer expert testimony about how underwriters process an application, but Plaintiff's expert may not stray from a description of what underwriters do when examining an application to pronouncing declarations about what Defendant could have or should have done.

**CONCLUSION**

Mr. Kelley is not an appropriate expert witness in this case as his testimony about claim rescission and processing is not relevant, and he does not have the specialized knowledge, skills, or experience that would qualify him to opine as an expert about agent/broker distinctions in the insurance marketplace. Moreover, even if Mr. Kelley were qualified to testify as an expert about agent/brokers, his proposed testimony relies on unsound methodology and constitutes inadmissible legal conclusions. Finally, under Rule 403, any testimony by Mr. Kelley that might be relevant is substantially outweighed by the danger of unfair prejudice.

While Ms. Dolan has the specialized knowledge, skills, and experience to testify about underwriting, many of her proffered opinions are irrelevant as they venture into assertions about underwriting duties and industry standards that either do not exist in New Mexico or are inapplicable. After the Court dismissed Plaintiff's bad faith claim, the Court ordered the parties to meet and confer about the remaining issues and then adjust proposed expert testimony. Plaintiff did not make the necessary substantive adjustments to Ms. Dolan's proposed opinions.[27] As currently presented, Ms. Dolan's relevant testimony is entangled with her irrelevant testimony.[28]

The Court will give Plaintiff another opportunity to revisit and correct Ms. Dolan's proposed testimony in accordance with the Court's rulings. Plaintiff must submit Ms. Dolan's

---

[27] Plaintiff's revised expert report deleted a small phrase "preponderance of" and two sentences: "Zurich's underwriters had a heightened duty to investigate when red flags that are evidence of possible fraud, anti-selection and material misrepresentations are present. This heightened duty was not met in this case." *See* Letter Brief dated July 1, 2020 (Doc. 284-2) at 8.

[28] *See, e.g.,* bullet point 12, which states:
> Zurich's underwriting of the application on Mr. Salopek was not done with ***sufficient care*** in that the ***proper investigation*** of ***material inconsistencies*** regarding his possible alcohol and tobacco use using sources known and/or available to Zurich ***was not investigated or pursued at the time of the application*** and was completed only at the time of the claim. In essence, Zurich failed to do its ***due diligence in underwriting*** at the time of the application and conducted post-claim underwriting on Mr. Salopek.

*See* Letter Brief dated July 1, 2020, Ex. 2 (Doc. 284-2) p. 6 (emphasis added). All highlighted terms presume an underwriting standard. This bullet point is also rife with improper legal conclusions. Each of Ms. Dolan's opinions suffer from similar problems.

proposed revised expert opinions to Defendant by November 6, 2020. Defendant must file any objections to the revised expert opinions by November 12, 2020.

IT IS ORDERED THAT:

1. As orally ruled at the March 9, 2020 pretrial hearing, Plaintiff's MOTION TO EXCLUDE ZURICH'S EXPERT CHARLES MCALEER, III (Doc. 216) and (Doc. 217) is DENIED;

2. The Court will take DEFENDANT ZURICH AMERICAN LIFE INSURANCE COMPANY'S MOTION TO PRECLUDE VERA DOLAN FROM OFFERING CERTAIN EXPERT OPINIONS AT TRIAL (Doc. 218) under ADVISEMENT pending the following additional briefing;

    a. Plaintiff is to submit a numbered restatement of Vera Dolan's proposed expert opinions—focused only on the trial issues as circumscribed by the Court's previous rulings—to Defendant by November 6, 2020.

    b. Defendant must respond by letter brief to Plaintiff's revised expert opinions by November 12, 2020.

3. DEFENDANT ZURICH AMERICAN LIFE INSURANCE COMPANY'S MOTION TO PRECLUDE DON KELLEY FROM TESTIFYING AS AN EXPERT AT TRIAL (Doc. 219) is GRANTED.

_____
SENIOR UNITED STATES DISTRICT JUDGE